**UNITED STATES of America,
Plaintiff,**

v.

**Charles FRIDAY, Defendant.**

**Crim. A. No. 5–80959.**

United States District Court,
E. D. Michigan, S. D.

Dec. 19, 1975.

⚌42.1(3)

Gordon Gold, Asst. U. S. Atty., Detroit, Mich., for plaintiff.

Elliott S. Hall, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

FEIKENS, District Judge.

Charles Friday is under indictment for falsely representing on a form in connection with the purchase of a pistol from a gun shop that he was not under indictment for a crime punishable by imprisonment for more than one year, in violation of 18 U.S.C. §§ 922(a)(6), (d)(1).[1] The grand jury charged that defendant was in fact under indictment (at the time he made the statement) for conspiracy to burn a dwelling house, conspiracy to burn insured property, and burning insured property, all violations of Michigan criminal statutes involving punishment exceeding one year in prison.

■ Defendant brought this motion to dismiss the indictment claiming that the federal statute under which he is charged is unconstitutional. Three arguments are advanced. First, defendant argues that the statute, by requiring the disclosure of pending indictments and predicating criminal sanctions on failure to make such disclosure, deprives him of the presumption of innocence guaranteed by the fifth amendment. Since he is innocent in the eyes of the law, defendant says, the law may not attach such consequences to the mere fact that he has been indicted. Defendant's argument reads far too much into the phrase "presumption of innocence". This term succinctly conveys the principle that no person may be convicted of a crime unless the government carries the burden of proving his guilt beyond a reasonable doubt. To be sure, this means that no criminal penalties may

---

1. 18 U.S.C. § 922(a)(6) provides in relevant part:

"(a) It shall be unlawful—

. . . . .

"(6) for any person in connection with the acquisition . . . of any firearm . . . from a . . . licensed dealer . . . knowingly to make any false or fictitious oral or written statement . . . intended or likely to deceive such . . . dealer . . . with respect to any fact material to the lawfulness of the sale or other disposition of such firearm . . . under the provisions of this chapter."

Section 922(d)(1) provides:

"(d) It shall be unlawful for any . . . licensed dealer . . . to sell or otherwise dispose of any firearm . . . to any person knowing or having reasonable cause to believe that such person—

"(1) is under indictment for . . . a crime punishable by imprisonment for a term exceeding one year.

Since § 922(d)(1) makes it unlawful to sell a firearm to a person under indictment for a crime punishable by imprisonment exceeding one year, the existence of such an indictment is clearly a "fact material to the lawfulness of the sale" for purposes of § 922(a)(6).

follow from the mere fact of indictment. It does not, however, mean that no significance at all may be attached to the indictment. Under the federal statutory scheme at issue here, Congress has determined "that the indictment of an individual for a crime punishable by imprisonment for a term exceeding one year is so often indicative of a propensity for violence that the indictment classification . . . was justified in the public interest". *United States v. Craven*, 478 F.2d 1329, 1339 (6th Cir. 1973). The significance attached to the indictment is that the indictee has a propensity for violence, and the consequences that follow are (1) an inability lawfully to purchase a firearm and (2) a duty to disclose the fact of the indictment in connection with such a purchase. These consequences do not violate the presumption of innocence, because they "[do] not authorize the fact finder at the criminal trial to infer guilt under the Federal Firearms Act from the existence of a prior indictment or even to discount the credibility of a witness because of such an indictment". *United States v. Thoresen*, 428 F.2d 654, 661 (9th Cir. 1970), *quoted with approval in United States v. Craven*, 478 F.2d at 1340.

Defendant's second argument is that the necessity for federal regulation of firearms traffic "arose from the failure of some states to enact effective gun control laws", *United States v. O'Neill*, 467 F.2d 1372, 1374 (2d Cir. 1972), and that this rationale does not apply here because the State of Michigan in fact has adequate gun control laws. This argument is rejected. Congress need not tailor its legislation to its underlying purposes with "mathematical nicety", *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369 (1911), and, in any event, Congress has in this case taken express account of the possible disparity among the several states. 18 U.S.C. § 927 provides:

"No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together."

Defendant presumably does not argue that Congress should legislate on a state-by-state basis, individually correcting the deficiencies in each state's gun control legislation; Congress has done all that is practicable in this regard by enacting § 927, which fully accommodates the consistent provisions of each state's law. If the congressional scheme conflicts with certain provisions of a state system, Congress has deemed the conflicting state provision *pro tanto* inadequate by providing that the federal law controls. (This would, of course, be the result in any event because of the supremacy clause.)

Defendant's third argument is that "there is no indication from the facts of this case that a propensity for violence is demonstrated by Defendant's indictment". Brief in Support of Motion to Dismiss at 2 (September 12, 1975). In essence, defendant's contention appears to be that the congressional purpose for requiring disclosure of indictments was to prevent firearms from being sold to persons with a propensity to violence— that *not all persons* under indictment for crimes punishable by incarceration exceeding one year in fact have such a propensity, so that the statute creates a conclusive presumption that is "not necessarily or universally true in fact" in violation of the due process clause. *Vlandis v. Kline*, 412 U.S. 441, 452, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973). In certain civil cases, the Supreme Court has recently invoked the "conclusive presumption doctrine" to invalidate state and federal statutes. This doctrine has been summarized as follows:

"When a statutory provision imposes a burden upon a class of individuals for a particular purpose and certain individuals within the burdened class are so situated that burdening them does not further that purpose, then the rigid statutory classification must be replaced, to the extent administratively feasible, by an individual factual determination that more accurately selects the individuals who are to bear the statutory burden. The legislature in such cases is said to have 'conclusively presumed' that all members of the burdened class possess those characteristics that caused the burden to be imposed, and due process is found to require an individual opportunity to rebut this presumption."

Note, *The Conclusive Presumption Doctrine: Equal Process or Due Protection?*, 72 Mich.L.Rev. 800, 800 (1974). In the present case, the burden imposed is the duty to disclose—on pain of criminal sanctions—that one is under indictment for a crime punishable by more than one year's incarceration, whenever one applies to purchase a firearm. The characteristic that causes this burden to be imposed is the propensity to violence. Congress has thus "conclusively presumed" that all persons under such indictments have a propensity to violence; unless this presumption is "necessarily or universally true in fact", the conclusive presumption doctrine appears to require an opportunity to rebut it.

■ The presumption of violent propensities with regard to persons convicted (rather than merely indicted) of crimes punishable by more than one year's imprisonment is made rebuttable by the statutory scheme. 18 U.S.C. § 925(c) provides in relevant part:

"A person who has been convicted of a crime punishable by imprisonment for a term exceeding one year (other than a crime involving the use of a firearm or other weapon or a violation of this chapter or of the National Firearms Act) may make application to the Secretary for relief from the disabilities imposed by Federal laws with respect to the acquisition . . . of firearms and incurred by reason of such convictions, and the Secretary may grant such relief *if it is established to his satisfaction that the circumstances regarding the conviction, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest.*" (Emphasis added.)

No such showing of nonviolence is permitted with regard to persons only under indictment. The status of being under indictment, however, is always temporary, which is not the case with the status of having been convicted. The United States Court of Appeals for the Sixth Circuit has stated that "Congress may, in pursuit of the sound objectives of the legislation, require indicted persons to tolerate this temporary limitation upon their right to transport weapons in interstate commerce". *United States v. Craven*, 478 F.2d at 1339–40, *quoting United States v. Thoresen*, 428 F.2d at 662.

Defendant's conclusive presumption argument must, of course, be evaluated in the light of the temporary nature of the disability to purchase firearms. There is, however, a further consequence that results from the conclusive presumption of violent propensities: failure to disclose the existence of the indictment in connection with the purchase of a firearm is itself a federal crime, punishable by up to five years imprisonment. 18 U.S.C. § 924(a). It is this latter consequence that the government seeks to impose here. The issue for decision is whether the due process clause permits Congress to impose this serious deprivation of liberty on the basis of a disclosure requirement that is in turn based upon a conclusive presumption of violent propensities. While the present prosecution is for failing to disclose a material fact, *see Cassity v.*

*United States,* 521 F.2d 1320 at 1323 (6th Cir. 1975), the court must decide whether Congress could constitutionally make this fact material.

In *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), the Supreme Court held unconstitutional a (rebuttable) statutory presumption that, on a charge of transporting marihuana with knowledge that it had been illegally imported, "possession of marihuana shall be 'deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury'". The statute authorized the fact finder to infer from mere possession both that the substance had been illegally imported and that the defendant knew of the unlawful importation. Since the evidence showed "that marihuana will grow anywhere in the United States, and that some actually is grown here", 395 U.S. at 37, 89 S.Ct. at 1549, the Court held that this presumption was not justifiable. The Court held:

> "[A] criminal statutory presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend."

395 U.S. at 36, 89 S.Ct. at 1548. The standard for rebuttable presumptions would seem to apply *a fortiori* to presumptions for which no opportunity for rebuttal is given. However, in *United States v. Thoresen, supra,* the court stated:

> "[*Leary* and an earlier case] are inapposite here. They pertain only to statutes authorizing the fact finder in a criminal trial to infer one fact (or element) from the existence of another. The section . . . in question is not of this character, since it represents only a determination made by Congress."

428 F.2d at 661.

Notwithstanding this rejection of *Leary* in a case analogous to the one before this court, it must be recognized that *Leary* was cited among other cases by the Supreme Court in *Vlandis v. Kline,* 412 U.S. at 446, 93 S.Ct. at 2233, as authority for the proposition that "[s]tatutes creating permanent irrebuttable presumptions have long been disfavored under the Due Process Clauses of the Fifth and Fourteenth Amendments". In *Vlandis,* as in this case, the "presumption" was not an evidentiary rule that permitted a fact finder to infer one fact from another. Rather, the presumption was that a rule denying instate tuition rates to those who resided outside the state at time of application for admission to a state university furthered the legislative purpose of granting instate tuition rates only to those who intended to become state residents. In the language of the *Thoresen* opinion, this was only a determination made by the state legislature. The present case therefore cannot be distinguished from *Vlandis* on the ground used in *Thoresen* to distinguish *Leary.* The same is true for *United States Dept. of Agriculture v. Murry,* 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973), and *Cleveland Bd. of Educ. v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), in both of which the Court applied the conclusive presumption doctrine to legislative classifications rather than evidentiary-type presumptions. *See* Note, *The Conclusive Presumption Doctrine: Equal Process or Due Protection?,* 72 Mich.L.Rev. at 827–30.

■ Under *Vlandis* and its progeny, the court would be inclined to find that the statutory scheme in this case creates a conclusive presumption "not necessarily or universally true in fact". Judicial notice may be taken of the fact that persons under indictment for crimes punishable by more than one year in prison do not necessarily or universally have violent propensities. However, the Supreme Court has indicated more recently its intent to limit *Vlandis, Murry* and

LaFleur to a narrow scope of applicability. In *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Court upheld against a conclusive presumption attack a statutory classification that presumed that one who married a wage earner nine months or less before the wage earner's death had entered into a sham marriage for the purpose of collecting social security benefits and thus conclusively precluded such person from receiving the benefits. The Court stated:

> "We think that the District Court's extension of the holdings of *Stanley* [*Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551], *Vlandis* and *LaFleur* to the eligibility requirement in issue here would turn the doctrine of those cases into a virtual engine of destruction for countless legislative judgments which have heretofore been thought wholly consistent with the Fifth and Fourteenth Amendments to the Constitution."

At 772, 95 S.Ct. at 2470. While the Court distinguished the conclusive presumption cases, *Salfi* has been interpreted as an attempt "to narrow the applicability of irrebuttable presumption analysis". *The Supreme Court*, 1974 Term, 89 Harv.L.Rev. 49, 82 (1975). The fact that the Supreme Court has this term applied the doctrine in a case factually similar to *LaFleur* may well indicate nothing more than an intent to limit the doctrine to the facts of the cases in which it has heretofore been applied. *See Turner v. Dept. of Employment Security*, 423 U.S. 44, 96 S.Ct. 249, 46 L.Ed.2d 181 (1975) (per curiam).

 The court therefore holds that the conclusive presumption doctrine should not be extended to this case. The standard for review is that set forth in *United States v. Craven*, 478 F.2d at 1339:

> "[A] statutory classification will not be set aside if a rational basis exists to sustain it."

This court is not called upon to decide whether the classification at issue is ra-

tional in all possible applications. As applied to persons under indictment for such crimes as tax evasion, counterfeiting or embezzlement, it might well be irrational to ascribe violent propensities to the fact of indictment. Defendant lacks standing to raise these hypothetical cases, however; his indictment includes a charge of conspiracy to burn a dwelling house, a crime of violence. As the *Thoresen* court stated with regard to an indictment for possession of bombs and bombshells, it is "not unreasonable for Congress to conclude that there is considerable likelihood that one indicted for such an offense has a propensity to misuse firearms", 428 F.2d at 662, thus a rational basis exists for the application of the statute to the present defendant.

Accordingly, defendant's motion to dismiss is denied. An appropriate order may be submitted.