**Floyd P. POORE, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 684S223.

Supreme Court of Indiana.

Dec. 22, 1986.

Gregory L. Caldwell, Noblesville, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Appellant Floyd Poore was tried by a jury and convicted of aiding in theft, a class D felony, Ind. Code § 35–43–4–2 (Burns 1979 Repl.), and aiding in burglary, a class B felony, Ind.Code § 35–41–2–4 and § 35–43–2–1 (Burns 1979 Repl.). He received consecutive sentences of four years and twenty years, respectively. The jury also found that Poore was an habitual offender and his sentence was enhanced by an additional thirty years. Because of our disposition of this direct appeal, we address only two issues:

1. Whether the trial court erred in denying Poore's motion to suppress evidence gained from an allegedly defective arrest, and

2. Whether the trial court improperly limited the examination of defense witness Lacey, thereby denying Poore the right to present evidence in his own behalf.

These are the facts which support the judgment of the trial court. On April 6, 1983, Floyd Poore and Herbert Goodwin traveled from New Castle to rural Noblesville, where they intended to approach farm houses until they found an unoccupied house to rob. True to their plan, Goodwin approached several houses while Poore waited in the car. Finding a house occupied, Goodwin would ask directions to Noblesville, return to the car, and proceed to another house.

This process continued until the pair reached the McGeary residence. The McGearys were on vacation, and the house was unoccupied. Poore dropped Goodwin off at the house. Poore was to circle around and return to retrieve him, along with any stolen goods, when the burglary was completed.

Meanwhile, the presence of the two strangers had attracted the attention of neighbors, who telephoned the Hamilton County sheriff's department with a description of Goodwin and the car driven by Poore. Before Poore could return to the McGeary house, he was stopped and questioned by a Hamilton County deputy. Poore said he had become lost on the way to Noblesville, where he had a doctor's appointment. He also explained that his passenger had been a hitch hiker. The deputy noted Poore's license number and gave him directions to Noblesville.

Setting out on foot, Goodwin was also stopped by Hamilton county deputies. Seeing them approach, Goodwin dropped the proceeds of the burglary in the ditch at the side of the road. He told the deputies he had ridden from New Castle to Noblesville with Poore, and he was now walking "for his health." The deputies transported him to a telephone where he called Poore, who had returned to New Castle.

That afternoon, the description of the suspicious car circulated throughout the neighborhood. Later that day, a neighbor saw a car matching that description and followed it. He observed the car stopped

at the side of the road, where a man was removing items from a ditch and tossing them in the backseat. The neighbor noted the license plate number, 33 D 4732, which was later found to be the license number of Poore's automobile. When the car eluded him, the neighbor returned to the roadside where the car had stopped and recovered several silver dollars and two dollar bills. These were later identified by Mrs. McGeary as similar to those taken in the burglary.

Poore and Goodwin were subsequently arrested in New Castle. Goodwin entered into a plea agreement with the State under which he received reduced charges and a favorable sentencing recommendation in exchange for his testimony in Poore's trial. Goodwin gave the only direct testimony implicating Poore as an accessory in the burglary and theft.

### I. Arrest Procedure

Poore alleges that his warrantless arrest was not supported by probable cause and that any evidence gained from that arrest should have been suppressed. However, no evidence was gained directly from Poore's arrest; rather, Poore seeks to suppress evidence gained from Goodwin's warrantless arrest.

■■■ Both parties appear to assume that Poore has standing to challenge Goodwin's arrest. Quite aside from the doubtful validity of this assumption, the arrests of both Poore and Goodwin were proper. An arrest without a warrant is proper when it is supported by reasonable and probable cause. *Arnold v. State* (1984), Ind., 460 N.E.2d 494. Probable cause to arrest without a warrant exists if the facts and circumstances known to the officer would warrant a person of reasonable caution to believe that the accused has committed the crime in question. *Gee v. State* (1984), Ind., 471 N.E.2d 1115. In this case, officers knew that Poore's car was seen in the area at the time of the burglary, and that it was seen again at a location where items stolen in the burglary were recovered. Poore was in the company of Good-

win, whose description matched that given by neighbors. Further, he had a criminal record of similar burglaries.

We have held defendant's car in the vicinity of the crime at the time of its commission, an accomplice removing stolen items from the car, and defendant's history as a known burglar sufficient to establish probable cause for a warrantless arrest. *Funk v. State* (1981), Ind., 427 N.E.2d 1081. In this case, the facts and circumstances known to the officers were sufficient to warrant a person of reasonable caution to believe that Poore and Goodwin committed the burglary in question. Thus, the trial court properly admitted evidence resulting from both arrests.

### II. Testimony of Defense Witness

Appellant claims that the court improperly limited his direct examination of a defense witness, thereby denying him the right to present evidence in his own behalf in violation of Ind. Const. Art. I, Sec. 13. Specifically, Poore charges that the trial court abused its discretion in failing to allow him to refresh the witness' recollection, to impeach the witness with prior inconsistent statements, or to ask the witness leading questions.

During the course of the trial, defense counsel learned of a potential defense witness, Percy Mac Lacey, Jr., who was an inmate of the Hamilton County jail. During a recess, counsel and Hamilton County deputy Mitchell Russell interviewed Lacey. When the State and the defense deposed Lacey in the presence of the court, the following exchange occurred:

Q. Is it my understanding that in one of these conversations something was said to the effect that from Goodwin that he was lying about what happened in the case involving Floyd Poore?

A. Yeah, I heard him say that.

\* \* \* \* \* \*

A. That's what I said and the deputy heard me. I told the deputy ... the deputy asked me, said, "Do you think he was lying or what?" and I said, "Yeah."

Q: Okay. You said that ... so Mitch Russell asked you if you thought he was lying?

A: Yeah, he asked me that and at the other ... then Goodwin ... the way Goodwin was telling me I see (sic) through what he was trying to do then that he was telling a lie. And then the way he was telling me that he was telling a lie.

Q: So, did Goodwin ever say anything to you in the library at that church service that night about lying?

A: Yeah.

Q: He did?

A: (Affirmative nod)

Q: What did he say?

A: He said that he was trying ... that he would lie so he could get the less time.

Poore then called Lacey during his case in chief. The tenor of this examination was set during the first few questions, when defense counsel asked the witness his name and Lacey responded:

A. Percy Lacey Mac, Jr.

Q: Okay, You say Percy Lacey Mac. Now, Mac is your middle name, isn't that correct?

A: Yeah.

Q: Yesterday when I met you you indicated Percy Mac Lacey, Jr., is your full name, is that correct?

A: Right.

[PROSECUTOR]: Your honor, I'm going to object at this point to counsel leading this particular witness.

THE COURT: Sustained.

When defense counsel questioned Lacey about his earlier conversations with Goodwin, Lacey related the conversation about Goodwin's "deal." However, he did not testify that Goodwin admitted lying. Defense counsel embarked upon efforts to elicit Lacey's earlier testimony.

 When a witness has omitted information given in a previous statement, the former statement may be used in two ways. If the witness is deliberately omitting certain testimony, the defendant would be entitled to impeach him under Ind.Code § 34–1–14–15 (Burns 1973), which allows a party to impeach his own witness in case of manifest surprise. If, however, the witness merely inadvertently omitted certain crucial facts, the defense could use the witness' prior statement to refresh his recollection. *King v. State* (1973), 260 Ind. 422, 296 N.E.2d 113.

Defense counsel's attempts to refresh Lacey's recollection or to impeach him with his prior inconsistent statements met with considerable opposition. In an attempt to demonstrate the witness' forgetfulness, counsel asked Lacey if he recalled anything further about the conversation with Goodwin. The State interrupted with preliminary questions, and the question was never answered. Further attempts to refresh Lacey's recollection met with continuing objections.

 Though defense counsel clearly expected Lacey to testify consistently with his earlier statements and expressed his surprise to the court, he was prevented from laying a proper foundation to impeach Lacey with his prior inconsistent statements. The proper foundation for a showing of a prior inconsistent statement is to show the date and place of the prior inconsistent statement and the person to whom it was addressed. *Taylor v. State* (1984), Ind., 469 N.E.2d 735. Defense counsel asked Lacey:

Q: When did I first meet you?

A: Yesterday in the jail.

Q: Okay. And did we have a conversation then?

[PROSECUTOR]: Objection, it's irrelevant.

THE COURT: Sustained.

Defense counsel also requested a continuance to allow the court reporter to type one page of Lacey's deposition. The State replied that "every once in a while a witness backfires ... Let's go on with our trial." The continuance was denied. Counsel then requested access to Deputy Russell's interview notes; the State objected, asserting that any notes or memorandum used to refresh a witness' recollection must be made by that witness. Though a memoran-

dum, written either by himself or by another, at or near the time of the occurrence, may be used to refresh the recollection of a forgetful witness, *Gaunt v. State* (1983), Ind., 457 N.E.2d 211, the State's objection was sustained.

Following Lacey's testimony, the defense called Deputy Russell in an attempt to elicit Lacey's prior inconsistent statements made in his presence. The State again objected, arguing that Russell's testimony was irrelevant because Poore could not impeach his own witness. Russell's testimony was refused.

■ Additionally, the court sustained a continuing series of premature objections, illustrated by the following testimony:

Q: Now, you were more specific ...

[PROSECUTOR]: Objection, your honor. That's the start of a leading question if I ever heard of one.

THE COURT: Sustained.

It is true that the general conduct of the trial is within the sound discretion of the trial court, and its judgment will not be reversed unless there is an abuse of that discretion. *Clifford v. State* (1984), Ind., 457 N.E.2d 536. The trial court's discretion, however, is limited by the defendant's right to present evidence in his own behalf. Ind. Const., Article I, Sec. 13. A reversal should be granted when the trial court's exercise of discretion was "unreasonable in the light of all attendant circumstances" and prejudicial to the defendant. *Emmons v. State* (1986), Ind., 492 N.E.2d 303, 305.

■ In this case, Goodwin's testimony constituted the majority of the evidence against Poore. The defense had already shown Goodwin's bias with evidence that Goodwin had entered into a favorable plea agreement, which called for a sentence of thirteen years, reduced from a potential sentence in excess of one hundred years. In comparison, Poore received a total sentence of fifty-four years. Goodwin had also been impeached on the basis of his extensive criminal record. Poore wished to present evidence that Goodwin's testimony was false.

Appellant's conviction rested in a substantial way on the testimony of Goodwin, a barely credible witness. On a matter so critical as this, the trial court should have allowed the presentation of this evidence. Considering the importance of the evidence defendant wished to present and its possible impact on the jury's determination, the court abused its discretion.

The judgment of the trial court is reversed and the cause remanded for a new trial.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.