Corbin Dean BARDONNER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 29A04-9107-CR-225.

Court of Appeals of Indiana,
Fourth District.

March 12, 1992.

Transfer Denied April 29, 1992.

Gregory L. Caldwell, Noblesville, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana and Cynthia L. Ploughe, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Corbin Bardonner (age 20) was charged with burglary and theft of property from the home of Theresa Zimmerman of Hamilton County. A jury acquitted Bardonner

of burglary, but found him guilty of theft,[1] a Class D felony. The judge sentenced Bardonner to three years imprisonment.

Bardonner appeals, raising the following issues:

1) Whether the court erred in overruling objections to the comments of the prosecutor during *voir dire;* and

2) Whether the court erred in refusing Bardonner the opportunity to present evidence of the confession of another individual for the burglary and theft.

We reverse because the prosecutor's comments during *voir dire* denied Bardonner a fair trial.

## DECISION

The evidence pertinent to our opinion (the sufficiency of which is not challenged by Bardonner) follow:

The Hamilton County home of Ms. Zimmerman was burglarized on November 27, 1989. Various items were stolen from the home including televisions, VCR, stereo speakers, banks, satellite control, a jar filled with loose change and a magnum of champagne. On the day of the theft, a Chem–Lawn truck driver observed a dark hatchback car with side pinstripes parked with the back open in the Zimmerman driveway. The truck driver observed a man of general description enter the car and speed away in such a manner as to spin the tires and throw gravel. Bardonner borrowed a friend's Mercury Lynx, a black hatchback car with side pin-stripes, to haul some "stuff" from Bardonner's home to his apartment. When he returned the car, he brought various items into the apartment, including a large jar filled with loose change, televisions, satellite equipment, stereo speakers, and a large bottle of champagne. Several witnesses, including Christopher Williams, who also lived in the apartment, testified that Bardonner told him that he had stolen the items. Bardonner sold some of the items to a neighbor, Shayne Marcum. Police, who received a tip that stolen items could be found in Marcum's apartment, recovered items marked with serial numbers matching those of the missing Zimmerman property.

### I. Prosecutorial Misconduct

During *voir dire* the prosecutor read excerpts from Justice White's separate opinion in *United States v. Wade* (1967), 388 U.S. 218, 256–258, 87 S.Ct. 1926, 1947–1948, 18 L.Ed.2d 1149[2] and discussed with the prospective jurors what it meant as far as the roles of the prosecutor and defense counsel in a criminal trial. First, Prosecutor Wayne Sturtevant asked a juror whether both sides have an obligation to seek the truth. When the juror responded in the affirmative, Sturtevant stated:

"Does everybody feel that way? *Both sides in this courtroom have an obligation to seek the truth. How many people would be surprised if I told you that wasn't the law?* Let me, just so we can discuss it a little bit, read you something here. This is from a United States Supreme Court case in 1967 and it's by Justice Byron White.

'Law enforcement officers have the obligation to convict the guilty and make sure they do not convict the innocent.' [*Id.* at 256, 87 S.Ct. at 1947.]

"Does everybody agree that that's the way it should be? I think on this side we should have an obligation to make sure we don't convict innocent people ... an innocent person. All right.

'They must be dedicated to making the criminal trial a procedure for the ascertainment of the true facts surrounding the commission of a crime.' [*Id.*]

"So from this side there is an obligation to seek the truth.

1. Ind.Code 35–43–4–2.

2. In *United States v. Wade* (1967), 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, the majority of the court held that a post-indictment lineup was a critical stage of prosecution at which a defendant had the right to counsel. Justice White, joined by Justices Harlan and Stewart, concurred in part with the majority, but dissented on whether a defendant had a right to counsel at a lineup. The point of Justice White's dissent was that he did not think it was wise or necessary to extend the adversary system to having defense counsel present at pretrial identifications. The passage the prosecutor read expresses the opinion of three Justices as to how the adversary system works.

The State's obligation in a criminal prosecution 'is not that it shall win a case but that justice shall be done.' [*Id.* at 256, n. 5, 87 S.Ct. at 1947, n. 5.]

"Does everybody agree with that ... that proposition too?

The prosecutor 'may prosecute with earnestness and vigor—indeed, he should do so. But while he may strike hard blows he's not a liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.' [*Id.*]

"Does that sound like the system that you would expect coming into the courtroom?

'Defense counsel need present nothing even if he knows what the truth is.' [*Id.* at 257, 87 S.Ct. at 1948.]

"Again, that's in line with what I told you that he doesn't have any obligation to do anything. The burden is on the State of Indiana.

'He [defense counsel] need not furnish any witnesses to the police or reveal any confidences of his client, or furnish any other information to help the prosecution's case. *If he can confuse a witness, even a truthful one, or make him appear at a disadvantage, unsure or indecisive, that will be his normal course.*' [*Id.* at 257, 87 S.Ct. at 1948.]

\* \* \* \* \* \*

'Undoubtedly, there are some limits which defense counsel must observe but more often than not, defense counsel will cross-examine a prosecution witness, and impeach him if he can, even if he thinks the witness is telling the truth ...'

'In this respect, as part of our modified adversary system and as part of the duty imposed on the most honorable defense counsel, we *countenance* or require conduct which in *many instances has little, if any, relation to the search for the truth.*'"

[*Id.* at 258, 87 S.Ct. at 1948.]

(R. 189–192, emphasis added). Defense counsel Gregory Caldwell objected as follows:

"Your Honor, I'm going to object. I'm going to move that be stricken and move for a mistrial. Irrespective of the Court's articulation of that language in a Supreme Court decision to offer that language as an explanation to my role in this trial at this part of the proceeding has no purpose other than to prejudice this jury and to set the Prosecutor ... to establish his position of being one of the Lone Ranger for truth and justice only and I am here to color the truth and alter the truth just like the previous argument that I argued against in a prior trial in this case. Now, that is improper, it is wrong, it is inflammatory, it is prejudicial. It is dictum of a Court in a decision explaining a decision. It has no part in this trial and there is no way I can overcome it at this point when he tries to prejudice this jury like that. I move for a mistrial."

(R. 192–193). The trial court did not strike the comments and denied the motion for mistrial. Sturtevant continued with the same line of questioning to the jurors about the differences in roles of trial counsel without further objection by defense counsel. Caldwell attempted to overcome the prosecutor's position by engaging in a discussion with prospective jurors to counter the prosecutor's suggestions that, as defense counsel, his duty was to conceal the truth. After further questioning, six jurors were stricken from the panel, and they were replaced by other jurors who had been seated in the courtroom. When the new prospective jurors were seated in the jury box, the prosecutor and defense counsel asked individual questions of these jurors. There was no question by the judge whether they had heard the questions which had been asked of the first group of jurors; however, Caldwell asked some individual jurors whether they had any questions or comments upon anything that had been said during the day. At the close of the State's case-in-chief, Bardonner's defense counsel renewed the motion for mis-

trial on the basis of the improper questioning during *voir dire.*

■ Bardonner contends the prosecutor committed misconduct as he read excerpts from Justice White's opinion—interspersed with questions and comments to the prospective jurors—and prejudiced the jury against him from the outset. He further argues that because the court did not admonish the jury, such conduct placed him in a position of "grave peril" necessitating a reversal. Bardonner acknowledges that when reviewing a charge of prosecutorial misconduct, this court first must determine whether the prosecutor in fact engaged in misconduct and then determine whether the misconduct placed the defendant in a position of grave peril to which he should not have been subjected. *Andrews v. State* (1989), Ind., 536 N.E.2d 507; *Burris v. State* (1984), Ind., 465 N.E.2d 171, *cert. denied* (1985), 469 U.S. 1132, 105 S.Ct. 816, 83 L.Ed.2d 809; *Maldanado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843. Whether the misconduct results in subjecting the defendant to "grave peril" is determined by the probable persuasive effect on the jury's decision, not by the degree of impropriety of the conduct. *Maldanado, supra.*

Bardonner cites several cases involving instances of prosecutorial misconduct meriting reversal, including *Robinson v. State* (1973), 260 Ind. 517, 297 N.E.2d 409. In *Robinson,* our supreme court stated that interrogating jurors in order to cultivate or condition them to be receptive to the cause of the examiner is a practice "repugnant to the cause of justice" and, if properly raised by a motion for mistrial at the end of the State's case-in-chief, warrants reversal. *Id.* at 521, 297 N.E.2d at 412.[3]

The State contends that the prosecutor did not commit misconduct because he was reading directly from an opinion of the Supreme Court and, even if improper, no reversal is necessary because Bardonner failed to show how he was placed in a position of grave peril, citing *Andrews, supra,* and *Hubbard v. State* (1974), 262 Ind. 176, 313 N.E.2d 346.

■ The granting of a mistrial is an extreme remedy within the sound discretion of the trial court and will be reversed only upon a showing of clear error. *Szpyrka v. State* (1990), Ind., 550 N.E.2d 316.[4] We note that following the denial of the mistrial, the defense counsel did not request the court to admonish the jury, which has been held to be a waiver of any claim of error resulting from the failure to admonish the jury. *Greer v. State* (1989), Ind., 543 N.E.2d 1124. However, defense counsel renewed his motion for mistrial at the close of the State's case-in-chief and, thus, preserved the error as required by

3. In *Robinson v. State* (1973), 260 Ind. 517, 297 N.E.2d 409, the prosecutor interrogated prospective jurors, ostensibly to determine their feelings regarding the death penalty. The prosecutor stated he wanted to determine the circumstances under which they would vote for the death penalty and then asked jurors questions based on hypothetical situations. One of the situations was unlike the circumstances in the case; the other question was: "If a father killed his twenty year old daughter because she resisted his sexual advances, could you vote for the death penalty then?" *Id.* at 519, 297 N.E.2d at 411. The facts assumed by the question resembled the circumstances of the case where a father was accused of killing his daughter; however, there was no evidence presented at trial as to the motive of the father—except that there had been friction between father and daughter, and there was innuendo which created a suspicion that the friction may have been incest oriented.

The defendant apparently moved to discharge the panel and the motion was denied by the trial court. On appeal, the *Robinson* court found the interrogation improper and highly prejudicial and would have been reversible error if properly preserved. The court stated that to preserve the error the defendant should have "moved for a mistrial at the end of the state's case in chief because it was within the context of the evidence that the propriety of the interrogation and the probability of harm therefrom had to be made." *Id.* at 522, 297 N.E.2d at 412.

4. We also observe that the defense counsel's motion for a mistrial at the beginning of trial was not the proper motion. *Voir dire* is not a part of the trial; the trial does not begin until the jury is impaneled and the cause is submitted. *Nix v. State* (1960), 240 Ind. 392, 166 N.E.2d 326. The motion should have been a motion to strike or discharge the jury panel or challenge the array. *See, e.g., Utterback v. State* (1974), 261 Ind. 685, 310 N.E.2d 552.

*Robinson, supra.*[5]

In *Hubbard*, the prosecutor, during *closing arguments*, read an excerpt from the *Wade* opinion. On appeal, Hubbard argued that the reading of the opinion was misconduct requiring reversal. Our supreme court stated:

> "The passages read by the prosecutor emphasized the point of view that at trial the role of the defense attorney is to serve his client rather than to join with law enforcement officers in an abstract search for truth. Appellants suggest that the reading of such a passage to the jury prejudiced them. *We think that by the end of a long trial a jury can hardly be unaware of the role of the defense counsel in our adversarial system. In any event, this act of the prosecutor was not such as to place the defendants "in grave peril" and thereby warrant a new trial."*

313 N.E.2d at 350, (emphasis added and citations omitted). *Accord, Abercrombie v. State* (1985), Ind., 478 N.E.2d 1236; *Drossos v. State* (1983), Ind.App., 442 N.E.2d 1.

We do not agree with the State that *Hubbard* is controlling and find that the circumstances there are distinguishable from the present case. First, it is not clear from the *Hubbard* court's opinion whether the prosecutor read verbatim from the same passage in *Wade* or—like the prosecutor in this case—interspersed his own comments interpreting the passages as he read them to the jury. Secondly, this case is clearly distinguishable because, here, the reading from *Wade* occurred during *voir dire* instead of during closing arguments where counsel are granted greater leeway in arguing the law and the facts. Our supreme court in *Hubbard* noted that the reading came *at the end* of a long trial and *after* the evidence had been presented. Thus, the *Hubbard* court indicated such

tactics were improper and, under other circumstances, could place a defendant in grave peril and merit reversal. In essence, the main difference is the evidence came in "clean" in *Hubbard* and, in this case, the evidence came in "tainted."

The prosecutor, in this case, began his comments by asking whether both sides have an obligation to seek the truth. When a juror responded "Yes", he told the jurors that such was *not the law* and then quoted from *Wade*. While we agree that a defense counsel does not have to put on any evidence and the burden of proof is on the State, we know of no rule of "law" that only the State has an obligation to seek the truth.

One might ask whether it would have been misconduct for the prosecutor to make these kinds of statements as his own opinion—without quoting from an opinion of a Justice of the Supreme Court? The New Jersey Supreme Court addressed this issue in *State v. Thornton* (1962), 38 N.J. 380, 185 A.2d 9, *cert. denied* (1963) 374 U.S. 816, 83 S.Ct. 1710, 10 L.Ed.2d 1039. The *Thornton* court criticized the prosecutor's comments which, in essence, misstated the role of defense counsel as requiring him to do anything to acquit his client and then glorified the role of the prosecutor as being different from the defense attorney's in that the prosecutor has to determine whether the facts indicate the guilt or innocence of the defendant before proceeding to trial. Because there was no contemporaneous objection, the *Thornton* court did not find reversible error; however, the court opined that the prosecutor's comments were *clearly improper and the prosecutor committed misconduct*, stating:

> "Pursuit of an acquittal is not the 'sole area' in which [defense counsel] oper-

---

5. Because Bardonner's defense counsel did not request the court to admonish the jury, there is a question as to whether he has waived the error. A claim that prosecutor misconduct has prejudiced a defendant usually requires that a contemporaneous objection be made to preserve the error for review; however, sometimes the conduct of the prosecutor has been held to be so detrimental to the cause of justice that it can amount to fundamental error even without a contemporaneous objection. *See, e.g., Hossman v. State* (1985), Ind.App., 473 N.E.2d 1059; *Johnson v. State* (1983), Ind.App., 453 N.E.2d 365. Fundamental error is that, which—if not corrected—would deny a defendant fundamental due process. *Smith v. State* (1984), Ind., 459 N.E.2d 355.

ates. His duty is to see to it that the lawful rights and privileges of an accused are not invaded and that [the defendant] is not convicted except on legal evidence and by due process of law.

"To suggest in a public forum, as the prosecutor did here, that a defense counsel's sole objective in a murder trial is acquittal, is to demean the profession generally and to use the dignity of the prosecutor's office not only to disparage counsel but also the quality of evidence he has submitted for consideration."

*Id.* 38 N.J. at 397, 185 A.2d at 18–19. The *Thornton* court further stated that it was improper for the prosecutor to inform the jury that he would not prosecute if he did not believe in the defendant's guilt because the weight of the prosecutor's official and personal influence might create the possibility that the jurors would consciously or unconsciously adopt the prosecutor's view without applying their own independent judgment to the evidence.

The fact that the prosecutor in the present case read remarks from Justice White's comments in a Supreme Court opinion does not make it *the law* or *proper for instructing the jury on the law. See, e.g., Abbott v. State* (1989), Ind., 535 N.E.2d 1169, 1172; *Drollinger v. State* (1980), 274 Ind. 5, 408 N.E.2d 1228. Other courts have recognized that the comments of Justice White are not the law, but merely an expression of his view of the roles of court and law enforcement officers. *See Pierce v. State* (1977), 34 Md.App. 654, 369 A.2d 140, 148, *cert. denied* (1977) 434 U.S. 907, 98 S.Ct. 307, 54 L.Ed.2d 194. The California Court of Appeals stated in *People v. Pic'l and Martin* (1981), 114 Cal. App.3d 824, 171 Cal.Rptr. 106, 133:

"Mr. Justice White's assessment of the role of the defense counsel in a criminal case vis-a-vis the role of the prosecutor is not one that is shared by all judges or courts. It paints with too broad a brush. In seeking to determine the true facts in our adversary system, it is inappropriate and inaccurate to describe prosecutors in

general as being more apt to be the real searchers for the truth than are defense counsel in general."

■ The purpose of *voir dire* is to ascertain whether prospective jurors can render a fair and impartial verdict in accordance with the law and evidence. *Emmons v. State* (1986), Ind., 492 N.E.2d 303. It plays a critical role in assuring criminal defendants that their Sixth Amendment right to an impartial jury will be honored. *United States v. Spaar* (8th Cir.1984), 748 F.2d 1249. Our supreme court has observed:

"This purpose 'can be best accomplished by the trial judge's assumption of a more active role in the *voir dire* proceedings and by exercising, rather than abdicating, his broad discretionary power to restrict interrogation to that which is pertinent for testing the capacity and competence of the jurors.'"

*Hall v. State* (1986), Ind., 497 N.E.2d 916, 918, quoting *Robinson, supra,* 260 Ind. at 521, 297 N.E.2d at 412. In *Hall,* the defendant alleged that he was prejudiced by the prosecutor's misstatement of the law during *voir dire.* The State argued that the incorrect statement was cured by the court's proper instructions on the elements of the crime. However, in reversing, our supreme court acknowledged the significance of effective *voir dire,* stating:

"This argument misses the importance of *effective voir dire.* Many experienced advocates believe their case has been determined by the time that the jury has been sworn. *If a jury is misinformed during voir dire* of the elements of proof required by the State, *then it will receive and evaluate evidence throughout the trial relying on this misinformation. We cannot say that a proper final charge would remove the taint. One party cannot place the other in a 'dying condition' and then expect to revive that party with instructions."*

*Hall,* at 918, (citations omitted, emphasis added).[6]

6. *But cf. Underwood v. State* (1989), Ind., 535 N.E.2d 118, where defendant claimed prosecutor's many comments during the trial were at-

tempts to discredit his attorney in front of the jury. Our supreme court held the remarks were no different than those in many jury trials

Even though *Hall* involved a misstatement of an element of the crime, we find the *Hall* court's comments are just as applicable to the present case—if jurors are tainted by the viewpoint that only the prosecutor is presenting the truth and the defense counsel's role is to obstruct the search for truth, they may evaluate every bit of evidence from this perspective.

■■■ Furthermore, we find no redeeming legal value in the prosecutor's comments as far as the purposes of selecting an impartial jury are concerned. First, we think these comments could be viewed as improper comments on the guilt of the defendant. "The danger of prejudice to the defendant by such statements is they may imply that the prosecutor has independent personal knowledge of facts other than those introduced at trial." *Garrett v. State* (1973), 157 Ind.App. 426, 300 N.E.2d 696, 700. A defendant is entitled to the presumption of innocence—a conclusion drawn by law in favor of the defendant, whereby his innocence is established until sufficient evidence is introduced to overcome the proof which the law has created. *Coffin v. United States* (1895), 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481. It is the principle that no person may be convicted of a crime unless the government carries the burden of proving his guilt beyond a reasonable doubt. *United States v. Friday* (E.D.Mich.1975), 404 F.Supp. 1343. Moreover, our constitution *guarantees* a defendant a right to cross-exam the witnesses against him. U.S. Const. amend. VI; Ind. Const. art. I §§ 12 & 13. There is no rule of law or presumption—nor should there be—that the prosecutor, in presenting the State's case, may only ask questions which elicit honest and truthful answers, but defense counsel's examination and cross-examination are for the purpose of obstructing the truth. If there were such a rule, we believe it would negate the defendant's presumption of innocence and shift the burden of proof to the defendant.[7]

■■■ Secondly, the prosecutor's conduct impinged on defendant's right to effective assistance of counsel. U.S. Const. amend. VI, XIV and Ind. Const., art. I, § 13. Once the right to counsel has attached and been asserted, the prosecution and the police have an affirmative obligation not to act in a manner that circumvents or dilutes that protection. 22 C.J.S. *Criminal Law* § 277 (1989), citing *Maine v. Moulton* (1985), 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481; *DeAngelo v. Wainwright* (11th Cir.1986), 781 F.2d 1516, *cert. denied* (1986), 479 U.S. 953, 107 S.Ct. 444, 93 L.Ed.2d 392. "The government violates the right to effective assistance of counsel when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense." 22 C.J.S. *Criminal Law* § 310 (1989), citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. The government may not establish detailed rules which prescribe conduct for defense counsel or limit the range of decisions about how to best represent a criminal defendant because such rules would interfere with the

> "constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. Indeed, the existence of detailed guidelines for representation could distract counsel from the overriding mission of vigorous advocacy of the defendant's cause."

*Strickland*, at 689, 104 S.Ct. at 2065.

■■■ Ineffectiveness of counsel resulting in prejudice to the defendant is reversible error. *Id.* Defense counsel can be rendered ineffective by his own actions or omissions or by the conduct of the prosecutor in making harassing or unfair comments (not disapproved by the trial court) which prevent the defense counsel from vigorously battling on his client's behalf. The defense counsel may be the sole barrier between his client and incarceration and,

---

where counsel spar for position and attempt to best their opponent.

7. When a defense counsel vigorously pursues cross-examination to bring out discrepancies in the State's case, is he not pursuing the truth—which, in a criminal case, is whether the defendant committed the crime beyond a reasonable doubt?

thus, should be able to focus his full attention to defending his client and *not himself.* Certainly, a defense counsel has a difficult enough time defending his client—his resources are generally less than those of the state—and his burden grows heavier if he must defend his own honor as well as his client's innocence. Here, as the evidence was presented during the course of the trial, the defense counsel had to be aware of his own demeanor, the phrasing of each question, and the fact that *he* was suspect if he vigorously cross-examined a State's witness. There is no question that the defense counsel was placed at a severe disadvantage.[8]

We also note that it is the duty of the prosecutor to cross-examine defense witnesses for the same purpose as defense counsel—ultimately, to discredit, if appropriate, a defense witness. The same is true of defense counsel in civil cases. Criminal defense counsel are no different than civil defense counsel with respect to the search for "truth" in that, in a civil case, when the plaintiff fails to present evidence on a material element, it is defense counsel's duty to ask for a judgment in his client's favor. Civil defense counsel has no obligation to volunteer evidence to prove the plaintiff's case, and neither does defense counsel when the prosecutor fails to present evidence of defendant's guilt with respect to all elements of a crime.

■ The only purpose for the prosecutor's comments on the respective roles of defense and prosecution is to prejudice the jurors into viewing the prosecutor as a "good guy" and the defense counsel as a "bad guy." We think this is an unfair tactic which not only negates the defendant's presumption of innocence, but also runs afoul of Ind.Prof.Conduct Rule 3.4, which requires fairness to opposing party and counsel, and prohibits an attorney from alluding to matters that the lawyer does not reasonably believe are relevant or will not be supported by the facts in issue. Here, the issue before the jury was whether the evidence was sufficient to convict

the defendant of the crimes beyond a reasonable doubt. It is not the jurors' responsibility to make a finding as to the role of the prosecutor and defense counsel or to determine the character of the defense counsel. This information is certainly not relevant to the case.

A defendant is entitled to a fair trial and an impartial jury. *Hall, supra.* The import of the prosecutor's comments was to portray the defense counsel as *not* a decent, honorable person, but a shyster. It has been stated that "[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." *Birkla v. State* (1975), Ind., 323 N.E.2d 645, 648, *cert. denied* (1975) 423 U.S. 853, 96 S.Ct. 99, 46 L.Ed.2d 77, quoting *Napue v. Illinois* (1959), 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217. Likewise, the jurors' estimates of the truthfulness of a witness or analysis of the evidence could be affected by the manner in which they perceive the role of defense counsel—"not with an open mind and resolution to give the defendant the benefit of reasonable doubt but rather with the seeds of suspicion firmly planted and anxiously awaiting germination." *Robinson, supra,* 260 Ind. at 520, 297 N.E.2d at 411.

Under the facts of this case, there may have been good reason for the prosecutor to use the *Wade* opinion to attack the defense counsel. His remarks are especially significant in that the prosecutor must have been aware that certain testimony of his witnesses might differ (and did) from other pre-trial statements they had made about the case. The prosecutor should have anticipated defense counsel's strategy would be to attempt to discredit and impeach such witnesses. Thus, the prosecutor's attempt to portray the State's role as the one presenting the truth and the defense role as the one attempting to obscure the truth could have been an attempt to

---

8. We go on record here stating that criminal defense attorneys and public defenders perform a valuable and highly respected service to the judicial process.

influence the jury to receive evidence in a light more favorable to the State. As defense counsel cross-examined each witness, the jurors may have, consciously or subconsciously, evaluated the evidence elicited by the defense counsel as tainted or suspect.

Here, there was no evidence placing Bardonner at the scene of the burglary.[9] Although there is no question that Bardonner had possession of the property, there was an issue as to whether he knew the property was stolen before *or* after his arrest. This issue involves an element of the crime of theft—Bardonner's criminal intent or knowledge. Bardonner testified that he purchased the items from John Miller, but was prohibited from testifying that Miller told him the property was stolen *only* after he was arrested and placed in a jail cell with Miller. *See* Issue II. The evidence was in conflict on this point. Several witnesses testified that Bardonner told them he stole the items or that he knew the items to be stolen. However, certain State's witnesses' trial testimony was inconsistent with testimony given in pre-trial statements.[10] Thus, the credibility of the witnesses against him was an issue.

Under the circumstances and with reliance on the holdings of our supreme court in *Hall* and *Robinson, supra,* we cannot say that the prosecutor's comments—attacking the integrity of defense counsel by indicating that defense counsel would do anything to hide the truth, including impeaching testimony of truthful witnesses—did not affect the jurors' verdict.

In summary, the prosecutor's remarks were clearly improper. Relying on *Hall* and *Robinson*—where improper comments

occurred during *voir dire*—we find that, under the facts of this case, Bardonner was denied effective counsel by the State, placed in grave peril and, thereby, denied a fair trial.

We therefore reverse and remand for new trial.

## II. Denial of Opportunity to Present Evidence Another Person Committed the Burglary and Theft

■ Although we reverse Bardonner's conviction on Issue I, we address this issue because it may arise again on retrial. Bardonner claims the trial court erred by denying him the opportunity to present evidence that John Miller, with whom he had shared a jail cell, had committed and confessed to the crimes with which he was charged. Miller could not be located to appear at trial, and the Court granted the State's Motion in Limine prohibiting 1) the introduction of John Miller's alleged confession to the crimes; 2) testimony of Officer Barlow, to whom Miller allegedly gave the confession; and 3) Bardonner from testifying that Miller confessed to him. When the court excluded the evidence, Bardonner made an offer to prove at the commencement of his case-in-chief in the form of a statement by his counsel, along with a copy of the alleged confession, and the testimony of Officer Barlow. Bardonner contends that the court improperly deprived him of the opportunity to present this evidence on his own behalf, which was found to be reversible error in *Poore v. State* (1986), Ind., 501 N.E.2d 1058. (Defendant was denied the right to present evidence in his own behalf where trial court improperly

**9.** The truck driver who observed an individual at the Zimmerman home the day of the burglary could not identify Bardonner. The car which Bardonner borrowed from his roommate was similar to the one described by the truck driver, but not positively identified. Although Bardonner's mother lived near the Zimmerman home, his mother testified it was not possible to see the Zimmerman home from her residence; thus, negating an inference that Bardonner was able to stake out the target home and observe when it was empty.

**10.** Chris Williams, Mike Leach and Brad Beasy testified in person and Jeremy Leach testified via deposition. All of these witnesses were roommates in the same apartment at the time of the robbery. All had access to the car belonging to another roommate, Tony Schuyler, and which was described as similar to the car observed at the Zimmerman home on the day of the burglary. In statements to the police, they each stated Bardonner told them he stole the property. At trial, they changed their story saying only that he told them he knew the property to be stolen. While such testimony, in either version, is very damaging to Bardonner, the inconsistency in their statements was important to defense to demonstrate that they were not credible.

limited direct examination of a defense witness who allegedly would have testified as to the credibility of an accomplice whose testimony constituted the majority of the evidence against defendant.) The State contends this evidence is nothing more than inadmissible hearsay.

Recently, our supreme court in *Thomas v. State* (1991), Ind., 580 N.E.2d 224, adopted *Fed.R.Evid.* 804(b)(3), which provides:

> (b) **Hearsay Exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (3) *Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. *A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.*

(Emphasis added). Our supreme court found the federal rule to be fair in that:

> "[t]he defendant is given the opportunity to introduce all evidence in his favor. Simultaneously, the trial judge retains discretion to keep from the trier of fact those statements that do not actually present sufficient assurances that the statement was, in fact, made. The trier of fact retains the traditional role of assessing the believability of each statement and deciphering the truth."

*Id.* at 227. This rule is consistent with *Chambers v. Mississippi* (1973), 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297, where the Supreme Court reversed the conviction of a defendant who was not permitted to introduce evidence that another person had confessed to the crime, and the confession was given under circumstances that indicated it was trustworthy and reliable. The Court rejected a "blanket" rule against the admission of declarations against penal interest. Before *Chambers*, Indiana had followed the rule that admissions against penal interest were not admissible. After *Chambers*—while not explicitly adopting the federal rule—our courts have followed *Chambers'* rationale in deciding such cases. *See Huffman v. State* (1989), Ind., 543 N.E.2d 360, *cert. denied* (1990), —— U.S. ——, 110 S.Ct. 3257, 111 L.Ed.2d 767 *(overruled on other grounds* by *Street v. State* (1991), Ind., 567 N.E.2d 102); *Taggart v. State* (1978), 269 Ind. 667, 382 N.E.2d 916.

With the rule in mind, we have reviewed the transcription of Miller's tape-recorded confession (R. 586) and the testimony of Officer Barlow and Bardonner. Bardonner, if permitted, would have testified that, when they were jailed together, Miller told him that he committed the burglary. Barlow would have testified that, 1) as a part of the plea agreement for an unrelated crime, Miller gave a "clean up" statement for other crimes he had committed; 2) Miller was given a limited immunity from prosecution for any crimes which did not involve bodily injury; and 3) the statement was not made under oath or in the presence of any member of the prosecutor's staff—thus, it was not subject to cross-examination. Furthermore, we have reviewed Miller's statement in which he admits he burglarized one home and gives a description of how to get to the residence. However, we agree with the State that Miller's confession is not sufficiently particularized so that one could conclude the house burglarized was the Zimmerman's. After reviewing the evidence as presented to the court in this trial, we find no error in the court's refusal to permit Bardonner to testify to Miller's alleged confession. Miller's statement neither exposed him to criminal liability for the burglary, nor was it accompanied by corroborating circumstances clearly indicating its trustworthiness.

Reversed and remanded for proceedings consistent with this opinion.

RUCKER, J., concurs.

CHEZEM, J., dissents with separate opinion.

CHEZEM, Judge, dissenting.

I respectfully dissent. Defendant failed to properly preserve the error. When the prosecutor read a dissenting opinion from the United States Supreme Court during *voir dire*, Defendant moved for a mistrial. The majority opinion correctly notes that this motion during *voir dire* was not the proper motion because *voir dire* is not part of a trial. The trial does not begin until the jury is impaneled and the cause is submitted. *Nix v. State* (1960), 240 Ind. 392, 166 N.E.2d 326. Defendant should have moved to strike, discharge the jury panel, or challenge the array. *See, e.g., Utterback v. State* (1974), 261 Ind. 685, 310 N.E.2d 552, and *Didio v. State* (1984), Ind., 471 N.E.2d 1117, 1122.

The majority relies upon *Robinson v. State* (1973), 260 Ind. 517, 297 N.E.2d 409 to allow for the preservation of the error via Defendant's motion for mistrial at the end of the state's case in chief. However, in *Robinson* the alleged error was an evidentiary issue mentioned during *voir dire* but not presented at trial. *Robinson* is inapposite, and here, the alleged error does not rest upon the presentation of the state's evidence. Therefore, a motion for mistrial at the end of the state's case fails to preserve the error.

While it is true that the conduct of a prosecutor has sometimes been held to be so detrimental to the cause of justice that it constituted fundamental error, I do not agree that one reading of a United States Supreme Court Justice's dissenting opinion during *voir dire* rises to that level. The majority opinion relies on the holding in *Hall v. State* (1986), Ind., 497 N.E.2d 916, in determining that defendant was placed in a "dying condition" or "grave peril" by the prosecutor's reading and that his reading affected the jury's verdict. However, I read *Hall* as being applicable only to repeated statements being made during *voir dire* regarding the elements of proof and not applicable to the reading of decisions. Furthermore, in *Evans v. State* (1986), Ind., 497 N.E.2d 919, 922, our Supreme

Court has indicated that the quantity of improper remarks may be as important as the content in producing a prejudicial effect. "The prejudicial effect of an isolated remark is aggravated by repeated instances of misconduct and the cumulative impact may require reversal." *Id. (citing Russell v. State* (1982), Ind., 438 N.E.2d 741.) The language of *Hall* and *Evans* does not indicate that the prosecutor's one reading would rise to the level of reversible error.

Finally, I cannot agree with the majority's distinction that the reading of this Supreme Court's dissenting opinion during *voir dire* is more prejudicial than its reading at closing argument. Our Supreme Court stated in *Hubbard v. State* (1974), 262 Ind. 176, 313 N.E.2d 346, 350, that "it is well settled in Indiana that reading from decisions to the jury is proper." [Citations omitted.] Neither *Hubbard*, nor the cases to which it cites, distinguish between closing argument and *voir dire*, and I do not believe that is an oversight. Likewise, a party has more opportunity to correct any prejudicial effect of an improper statement during *voir dire* than during closing argument. A potentially prejudiced party may question a juror about his thoughts toward a remark. Counsel may strike any prejudiced jurors. He may request an admonishment, or he may request a specific jury instruction which directs the jury to disregard the statements of counsel as evidence in a case. Here, Defendant did not question the jury panel on their impressions of the prosecutor's reading. He did not request an admonishment, nor does the record indicate that he requested any special jury instructions. I make the same inference as the Court did in *Evans, supra,:* counsel's failure to take curative measures indicates that the damage was not as severe as appellant now suggests.

The prosecutor's reading reflects poor judgment and form, and this dissent should not be read as giving full support for the reading of the *Wade* opinion. The reading of the dissenting opinion in *Wade* is borderline harmful, and a prosecutor should not be this close to the line. The *Wade* dissent by Justice White does not completely re-

flect the law, and I agree with the majority opinion that the reading had no redeeming value. However, the reading did not rise to the level of reversible or fundamental error.

For the foregoing reasons, I would affirm Defendant's conviction.