Deama W. THOMAS, Appellant,

v.

STATE of Indiana, Appellee.

No. 71S03–9110–CR–845.

Supreme Court of Indiana.

Oct. 25, 1991.

Joseph F. Rubin, Mishawaka, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

## ON PETITION TO TRANSFER

KRAHULIK, Justice.

Defendant–Appellant Thomas raises several issues stemming from his conviction for bank robbery. Because we find resolution of one of these issues will require a new trial, we address only that issue.

### FACTS

On June 7, 1988, the Sobieski Savings and Loan in South Bend, Indiana, was held up. Two bank tellers described the holdup man as a heavy-set dark-complected male. Vicki Bailey, a cashier at a nearby liquor store, contacted police after hearing reports of the robbery and a description of the alleged perpetrator, and informed them that a male matching that description had purchased cigarettes from her at a time approximate to the robbery. The store clerk was asked to view a photo array. This group of photos did not contain a picture of Thomas. It did, however, include a picture of Eric Nelson. Bailey chose Nelson, but the identification was not a positive one.

Later, police received a tip implicating defendant through a "crime stoppers" program. The police changed the focus of their attention to Thomas. Subsequently, Thomas was selected by the bank tellers at a lineup in which Nelson was not included. In fact, Nelson and Thomas closely resembled one another and never appeared together in either a photo-array or a lineup.

During the period before Thomas' trial, Nelson was arrested in a different matter and held in jail. There, Nelson allegedly bragged to a number of people that he committed the robbery for which Thomas was to be tried.

Thomas called Nelson as a witness during his trial in order to question him regarding the statements, but Nelson invoked the Fifth Amendment. Thomas next proposed to call 20 witnesses who would testify as to Nelson's statements. This proffer was refused by the trial court as hearsay. The Court of Appeals in an unpublished memorandum decision upheld the trial court's action, 569 N.E.2d 1005, holding that, under existing Indiana law, it was proper to exclude third party confessions and declarations against penal interest, because such are "permeated with untrustworthiness," citing *Partlow v. State* (1983), Ind., 453 N.E.2d 259, *cert. denied* (1984) 464 U.S. 1072, 104 S.Ct. 983, 79 L.Ed.2d 219. We disagree with this holding.

### *Declarations Against Penal Interest*

Despite the fact that declarations against proprietary and pecuniary interest long have been considered exceptions to the rule against hearsay, declarations against penal interest have been forbidden. The search for the historical rationale for this exclusionary rule leads to the case of *Sussex Peerage*, which arose in 1843 following the death of the Duke of Sussex. 71 CL. & F. 85, 8 Eng.Rep. 1034 (1844). Augustus Frederick D'Este asserted to succeed to the "honors, dignities and privileges" of his father, the Duke. D'Este claimed that an official of the Church of England had married the Duke and D'Este's mother in Rome. The Duke had not received the King's permission however and, thus, was marrying outside of the Royal Marriage Act. D'Este offered to present the testimony of the official's son, who would testify that his father told him about performing the ceremony of marriage between the Duke and D'Este's mother in Rome. D'Este argued that because it was a crime to marry one who had not complied with the Royal Marriage Act, the official's state-

ment was against penal interest and, thus, trustworthy. The Committee for Privileges of the House of Lords refused to consider the statement and, thus, the prohibition against declarations against penal interest was born. Despite the fact that early scholars in the United States belittled the decision in *Sussex Peerage*, the United States Supreme Court accepted the rule without scrutiny in *Donnelly v. The United States* (1913), 228 U.S. 243, 33 S.Ct. 449, 57 L.Ed. 820.

In 1973, the Supreme Court reversed its position and decided *Chambers v. Mississippi* (1973), 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297, a case with some factual similarity to the one we are considering. In *Chambers*, the defendant claimed infringement of due process after he was denied the opportunity to present four witnesses who would testify as to statements made to them by a third party, McDonald, naming himself as perpetrator of the crime of which Chambers was accused.

In its holding, the Court was careful not to tred on the State's traditional rights to fashion its own rules of criminal procedure. The Court instead determined that Chambers' due process rights had been violated because "under the facts and circumstances of this case, the ruling of the trial court deprived Chambers of a fair trial." *Id.* at 303, 93 S.Ct. at 1049, 35 L.Ed.2d at 313. The Court took the position that blanket inadmissibility of declarations against penal interest was improper and unnecessary. The Court noted in *Chambers* that "few rights are more fundamental than the right of an accused to present a defense." *Id.* at 302, 93 S.Ct. at 1049, 35 L.Ed.2d at 313. The Court went on to say, however, that the accused must comply with rules designed to assure fairness and reliability of result. "Although perhaps no rule of evidence has been more respected or more frequently applied in jury trials than that applicable to the exclusion of hearsay, exceptions tailored to allow the introduction of evidence which in fact is likely to be trustworthy have long existed." *Id.* at 302, 93 S.Ct. at 1049, 35 L.Ed.2d at 313.

The Court held that the testimony offered in *Chambers* contained such "persuasive assurances of trustworthiness" that it was "well within the basic rationale of the hearsay rule exception for declarations against interest." *Id.* at 302, 93 S.Ct. at 1049, 35 L.Ed.2d at 313. The Court noted, for example, that "the sheer number of independent confessions provided corroboration for each." *Id.* at 300, 93 S.Ct. at 1048, 35 L.Ed.2d at 312. The Court also considered that each confession was clearly against the interest of the declarant, because it was made with the knowledge that it could be disclosed and that such disclosure could result in prosecution.

By this holding, the Court implicitly stated the view then proposed by the drafters of the Federal Rules of Evidence. In fact, the adopted version of the Federal Rules of Evidence 804(b)(3) closely mirrors the approach taken by the Supreme Court in *Chambers*. The rule provides that:

(b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

\* \* \* \* \* \*

(3) *Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

*Fed.R.Evid.* 804(b)(3). This rule serves to assure a defendant his due process right to present evidence in his favor while protecting the trial court's ability to exclude evidence that is irrelevant or insufficiently trustworthy.

At the time the Federal Rules of Evidence were being drafted, critics charged

that, by allowing declarations against penal interest, the courts would be deluged by witnesses giving perjured testimony regarding statements that were not made or truthful testimony regarding false statements. The possible unsavory character of both the witness and the declarant in these cases reinforced this fear. Wigmore, however, among many others, had rejected these critical charges noting that "any rule which hampers an honest man in exonerating himself is a bad rule, even if it also hampers a villain in falsely passing for an innocent." 5 Wigmore *Evidence,* § 1477 at 359 (Chadbourn Rev.1974). To reject offered testimony merely because it *could* be false would be to reject all testimony.

■ The Federal Rules of Evidence have been in use for over 16 years. Our research suggests that the rule considered here has been effective. The defendant is given the opportunity to introduce all evidence in his favor. Simultaneously, the trial judge retains discretion to keep from the trier of fact those statements that do not actually present sufficient assurances that the statement was, in fact, made. The trier of fact retains the traditional role of assessing the believability of each statement and deciphering the truth.

■ This rule is not in conflict with this Court's post-*Chambers* holdings in *Partlow v. State* or *Taggart v. State* (1978), 269 Ind. 667, 382 N.E.2d 916, because neither *Partlow* nor *Taggart* contained "corroborating circumstances indicating the trustworthiness of the statement." To the contrary, in *Taggart* the alleged "admission" consisted of a typewritten confession which the declarant offered for sale to the defendant. This Court had little hesitation in upholding the trial court's rejection of this evidence because it lacked the "persuasive assurances of trustworthiness that characterized the statements in *Chambers.*" 382 N.E.2d at 919. Similarly, in *Partlow,* the declarant had "recanted the statement and claimed that he had made the statement only because his family had been threatened by a member of the defendant's family." 453 N.E.2d at 271. Again, this Court

easily held that such evidence was "permeated with untrustworthiness."

In contrast, here, as in *Chambers,* sufficient corroborating evidence exists to allow the exculpatory statements to be presented. Particularly important is the fact that Nelson was originally selected as the perpetrator, but, after the "crime stoppers' tip implicating Thomas was received, Nelson was dropped from the investigation and was not included in any future lineups or photo arrays. Additionally, he allegedly bragged to as many as 20 people regarding the robbery, which he described in great detail. Clearly, sufficient corroboration existed to indicate the trustworthiness of the statements. Thus, pursuant to the rules adopted today, Thomas should have been allowed to present evidence of Nelson's statements against interest.

Accordingly, we hereby accept transfer, reverse Thomas' conviction and remand for a new trial.

SHEPARD, C.J., and DeBRULER and DICKSON, JJ., concur.

GIVAN, J., dissents, with separate opinion.

## ON CRIMINAL PETITION TO TRANSFER

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion in this case. After correctly citing the history of the rule barring the admission into evidence of confessions by third parties to the crime at issue, the majority states that the Supreme Court of the United States reversed its position in *Chambers v. Mississippi* (1973), 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297. I would submit that the decision in *Chambers* was not a total reversal of the evidentiary rule nor do I agree with the statement in the majority opinion that *Chambers* is factually similar to the case at bar.

In *Chambers,* police officers, in attempting to effect an arrest, had met with severe opposition from a large group of people, and during the melee, shots were fired from the crowd which struck and killed one

of the officers. Chambers was one of the persons in the crowd and was struck by fire returned by the wounded officer. However, no one, including several officers present, was able to state that Chambers was the one who fired the fatal shot or that he in fact fired any shot.

Sometime after the shooting, a man named McDonald, after first consulting with a minister who was a personal friend, went to Chambers' attorney and gave a sworn statement that he shot the officer. He told the attorney that on three prior occasions he had informed friends that he had committed the shooting. However, after his arrest, McDonald repudiated his statements and eventually was released.

Justice Powell, writing for the United States Supreme Court, observed that:

"In large measure, he was thwarted in his attempt to present this portion of his defense by the strict application of certain Mississippi rules of evidence.... that the application of these evidentiary rules rendered his trial fundamentally unfair and deprived him of due process of law."

*Id.* 410 U.S. at 290–91, 93 S.Ct. at 1043, 35 L.Ed.2d at 305.

After observing that the specific facts of the case required the implementation of an exception to the hearsay rule, Justice Powell stated:

"In reaching this judgment, we establish no new principles of constitutional law. Nor does our holding signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures. Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprive Chambers of a fair trial." *Id.* 410 U.S. at 303–04, 93 S.Ct. at 1049, 35 L.Ed.2d at 313.

In *Taggart v. State* (1978), 269 Ind. 667, 382 N.E.2d 916, cited by the majority, the rule and its exceptions were recognized including a quotation from *Chambers.* There this Court correctly held that the admissibility of such a statement depends in a large part upon the trustworthiness of the person making the statement. In *Tag-gart,* the person making the statement had offered it for sale to Taggart for $5,000.

In the case at bar, there was no confusion such as that which existed in *Chambers* where authorities were unable to pinpoint who fired a shot from a large crowd. The only issue in this case was that either Eric Nelson or appellant perpetrated the robbery. Although Nelson had at one time been identified in a photographic array, which did not include appellant, when appellant was placed in a lineup in which Nelson was not included, the bank tellers identified him as the holdup man. The issue turns upon the great similarity of the appearance of Nelson and appellant. Also, unlike the facts in *Chambers,* very little reliability could be placed upon Nelson's braggadocio statements to other inmates in the jail where he was held on other charges. These statements were never made to persons in authority or to any one other than inmates of the jail. The ruling in *Chambers* is undoubtedly correct in stating that a given set of facts can justify a departure from the general rule. However, I see nothing in the factual situation in the case at bar which can justify such a departure.

I therefore would hold that in the case at bar the rule was applied properly. I would affirm the trial court.