**James R. GRIFFIN, Appellant**
**(Defendant Below),**

**v.**

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

No. 49S02–0101–CR–43.

Supreme Court of Indiana.

Feb. 22, 2002.

Brent Westerfeld, Indianapolis, IN, for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, IN, for Appellee.

**ON PETITION FOR REHEARING**

SHEPARD, Chief Justice.

We recently affirmed James R. Griffin's conviction for carjacking. *Griffin v. State,* 754 N.E.2d 899 (Ind.2001). He now seeks rehearing.

A petition for rehearing is a vehicle that affords the reviewing court the "op-

portunity to correct its own omissions or errors." *Daviess–Martin County Rural Tel. Corp. v. Pub. Serv. Comm.*, 132 Ind. App. 610, 625, 175 N.E.2d 439, 440 (1961). A petitioner may seek rehearing only on points raised in the original brief. *Armstrong v. Hufty*, 156 Ind. 606, 55 N.E. 443, 60 N.E. 1080 (1901).

A proper petition does not simply ask the court "generally to re-examine all the questions in the record, or all the questions decided against the party filing it." *Goodwin v. Goodwin*, 48 Ind. 584, 596 (1874). Judge Byron Elliott [1] pointed out that claimed errors in the original decisions must be articulated with precision, and that a party cannot be regarded "as having stated a point where he does no more than assert, in general terms, that a ruling was erroneous." Byron K. Elliott & William F. Elliott, *Appellate Procedure and Trial Practice Incident to Appeals* § 557 (1892).

As Judge Arch Bobbitt and Frederic Sipe noted, when a general rehearing is granted, the case stands before the court as if it had never been decided. 5 Arch N. Bobbitt & Frederic C. Sipe, *Bobbitt's Revision, Works' Indiana Practice* § 111.3 (5th Ed.1979). By contrast, when rehearing is granted as to a particular point, the original opinion will be modified as to that point only. *Id.*

Griffin argues in his petition for rehearing that we did not fully address his claim (further explained below) that the trial court's hearsay ruling violated his federal right to due process. Although Griffin presented this argument almost in passing, he did cite some federal authority and made a limited argument about it. (Appellant's Br. at 14–18.) We therefore agree that the issue was sufficiently raised and that rehearing is appropriate to address this issue.

■ Griffin challenges our conclusion that the trial court properly excluded testimony by his former attorney that one William Dulin confessed to the crime. (Pet. Reh. at 1.) The defense put Dulin on the stand, knowing he would deny having confessed, in order to get the attorney's hearsay testimony admitted under the guise of impeachment. *Griffin*, 754 N.E.2d at 904.

Griffin says we failed to consider *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). In *Chambers*, a murder occurred during a barroom brawl. *Id.* at 285–86, 93 S.Ct. 1038. Four months afterward, Gable McDonald swore in writing that he was the shooter, but he later repudiated his confession. *Id.* at 287–88, 93 S.Ct. 1038. Three of McDonald's acquaintances were prepared to testify that he orally confessed to them on separate occasions. *Id.* at 292, 93 S.Ct. 1038.

At trial, Chambers' lawyer called McDonald and introduced the written confession into evidence. *Id.* at 291, 93 S.Ct. 1038. The State then elicited testimony about the repudiation, plus a fresh denial by McDonald. *Id.* Chambers was denied permission to cross-examine McDonald as an adverse witness based on Mississippi's "voucher" rule. *Id.* at 295, 93 S.Ct. 1038. He was also denied the opportunity to introduce testimony by the three other witnesses to whom McDonald confessed. *Id.* at 292, 93 S.Ct. 1038.

The U.S. Supreme Court held, "[U]nder the facts and circumstances of this case" the "exclusion of this critical evidence, *coupled with* the State's refusal to permit

---

1. In addition to serving on this Court from 1881 to 1893, Judge Elliott was the founding dean of the Indiana Law School, a predecessor of the Indiana University School of Law at Indianapolis.

Chambers to cross-examine McDonald, denied him . . . due process." *Id.* 302–03, 93 S.Ct. 1038 (emphasis added). It emphasized "persuasive assurances of trustworthiness" of the hearsay statements: (1) three confessions made spontaneously to close acquaintances shortly after the murder; (2) other corroborating evidence;[2] (3) the fact that the statements were against interest; and (4) the fact that McDonald was available at trial. *Id.* at 300–02, 93 S.Ct. 1038.

*Chambers* does not, as Griffin claims, stand for the proposition that the exclusion of hearsay evidence about a single confession, standing alone, violates federal due process.[3]

Griffin's case is distinguishable from *Chambers* for several reasons. Most importantly, unlike in *Chambers*, Griffin

claims only one evidentiary error, because he was permitted to attack Dulin's credibility and motivation.[4] Moreover, the trial court allowed certain testimony alluding to Dulin's alleged confession. The former attorney was not allowed to answer the question "Did [Griffin] make a confession?", (R. at 390), but she testified that when she was still on the case she listed Dulin as a defense witness because he made "statements that would strengthen [Griffin's] case," (R. at 392–93).

The confessions at issue in the two cases are also very different in terms of reliability. Griffin points to one oral confession made to a person who, although bound by professional ethics, was serving as his legal advocate, compared to Chambers' three confessions to disinterested acquaintances.[5] Furthermore, the corroborating

---

**2.** Other evidence implicating McDonald included: (1) eyewitness testimony by a friend of McDonald who saw him fire the fatal shot; (2) a witness who saw McDonald holding a pistol immediately after the shooting; (3) evidence that McDonald owned a pistol of the type used; and (4) evidence that McDonald bought another pistol later. *Id.* at 300, 93 S.Ct. 1038.

**3.** *See Montana v. Egelhoff*, 518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996)(no fundamental right to have jury consider evidence of voluntary intoxication). Justice Scalia, writing for a four-justice plurality, said:

> *Chambers* was an exercise in highly case-specific error correction. At issue were two rulings by the state trial court at Chambers' murder trial. . . . We held that both of these rulings were erroneous. . . . Thus, the holding of *Chambers* if one can be discerned from such a fact-intensive case is certainly not that a defendant is denied a "fair opportunity to defend against the State's accusations" whenever "critical evidence" favorable to him is excluded, but rather that erroneous evidentiary rulings can, in combination, rise to the level of a due process violation.

*Id.* at 52–53, 116 S.Ct. 2013. Note, however, Justice O'Connor's response on behalf of the four dissenters: "The plurality's characteriza-

tion of *Chambers* as 'case-specific error correction' cannot diminish its force as a prohibition on enforcement of state evidentiary rules that lead, without sufficient justification, to the establishment of guilt by suppression of evidence supporting the defendant's case." *Id.* at 62–63, 116 S.Ct. 2013 (internal citation omitted).

**4.** Griffin's lawyer introduced a booking sheet giving Dulin's first name as James, the name the carjacker used, which Dulin denied ever having used. (R. at 351, 353.) Dulin then admitted he was residing in jail, facing charges for another crime. (R. at 357.)

**5.** The dissent says Patricia Griffin, Dulin's former girlfriend and the defendant's sister, also heard Dulin admit to the carjacking. Ms. Griffin testified on cross-examination as follows:

> Q. I'll ask you again, Miss Griffin, did Mr. Dulin tell you he committed any crime?
> A. Yes.
> Q. Yes?
> A. Yes.
> Q. Now, a few minutes ago, before this trial started, me and you stood right back there, did we not? Remember this?
> A. Yes.
> Q. And we spoke, did we not?

evidence against Dulin is meager[6] compared to the eyewitness testimony against McDonald in *Chambers.*

The dissent's more generous application of *Chambers* would create serious potential for abuse. Any friend of a defendant with access to the crime scene, later knowledge of the whereabouts of contraband, or similar circumstantial connections could confess to a reliable witness that he actually committed the crime. The friend could then promptly repudiate that confession, leaving the defendant with a credible witness to finger someone else but running little or no risk of prosecution and conviction.

In summary, *Chambers* does not establish that Griffin was denied federal due process.

Griffin also cites *Thomas v. State,* 580 N.E.2d 224 (Ind.1991), but this too is readily distinguishable. The trial court in *Thomas* improperly excluded a jailhouse confession by the original suspect in a robbery, who described the crime in great detail to as many as twenty people. *Id.* at 227. As in *Chambers,* "the sheer number of independent confessions provided corroboration for each." *Thomas,* 580 N.E.2d at 226 (quoting *Chambers,* 410 U.S. at 300, 93 S.Ct. 1038).

Having considered Griffin's claim, we conclude the trial court should be affirmed.

DICKSON, SULLIVAN, and RUCKER, JJ., concur.

BOEHM, J., dissents with separate opinion.

BOEHM, Justice, dissenting.

Griffin offered the testimony of Lorinda Youngcourt, his former attorney. Youngcourt, in an offer to prove in question and answer form, testified that she met with William Dulin in the course of preparing to defend Griffin in this case, and in that meeting Dulin confessed that he had committed the carjacking. I think Youngcourt should be viewed as a disinterested party. I also believe her testimony is corroborated by enough other evidence that its exclusion deprived Griffin of his Sixth Amendment right to present witnesses in his

A. Yes.
Q. And did you not tell me Mr. Dulin did not—specifically told you he did not commit a crime? Is that what you just told me a few minutes ago?
A. No.
Q. No?
A. No.
Q. What did you tell me?
A. I told you it was him and Rill (sic).
Q. You told me, did you not, he said—he denied committing any crime.... Did you—Are you telling me that you did not sit right there a few minutes ago—a couple hours ago, at least, and tell me that Mr. Dulin told you he most assuredly did not commit the crime? Isn't that true?
A. No.
Q. That's not true?
A. No.
Q. Where did I go wrong?
A. Unless I'm misunderstanding what you're saying.
Q. Did I—In fact, I specifically asked you. The specific question I asked you was, "So you're telling me Mr. Dulin did not admit to committing any crime?" You said, "That's correct."
A. I misunderstood the question.

(R. at 382–84.)

Ms. Griffin changed her earlier story that Dulin specifically denied the carjacking, said she heard Dulin admit that he committed some unspecified crime, and implicated "him and Rill" in the carjacking. Ms. Griffin did not, however, testify that she heard Dulin admit to the carjacking, as the dissent asserts.

6. Dulin lived with Griffin's sister Patricia at the house where the carjackers met the victim. (R. at 381, 386.) Patricia testified that Dulin showed her where the carjacked vehicle was parked on some date after the carjacking occurred. (R. at 381, 384.)

defense. Accordingly, I respectfully dissent from the Court's conclusion that this testimony is not sufficiently reliable to be admissible under the basic fairness doctrine enunciated in *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

Griffin was denied an opportunity to present Youngcourt's testimony because Dulin's confession was deemed hearsay if offered to prove the truth of Dulin's statement that he was the perpetrator. The same evidence was excluded as impeachment of Dulin under the doctrine that impeachment is improper if the sole basis for calling the witness to be impeached (Dulin) was to lay the groundwork for otherwise inadmissible impeaching evidence (Youngcourt's testimony). *Griffin v. State*, 754 N.E.2d 899, 904–05 (Ind.2001).

I agree that Youngcourt's testimony does not fall within any exception to the hearsay rule. Her account of Dulin's confession is not permitted as a statement against interest under Indiana Evidence Rule 804(b)(3)[1] because Dulin was not "unavailable" as that term appears in Indiana Evidence Rule 804(a).[2] Indeed, Dulin was present and testified at Griffin's trial. Nor was Youngcourt's testimony admissible as a prior inconsistent statement by a witness under Indiana Evidence Rule 801(d)(1)[3] because Dulin's confession to Youngcourt was not given under oath. For the reasons given in the Court's initial opinion, I also agree that this court correctly applied Indiana precedent which does not permit Youngcourt's testimony as impeachment of Dulin if Dulin was called as a witness solely to obtain his denial of a confession, thereby laying the groundwork for Youngcourt's impeaching testimony. Accordingly, I agreed with the majority and concurred in the original opinion affirming Griffin's conviction under Indiana Evidence Rules. I now believe I was incorrect in that view.

In *Hubbard v. State*, 742 N.E.2d 919, 922 (Ind.2001), this Court recently repeated the admonition from *Huffman v. State*, 543 N.E.2d 360, 375 (Ind.1989) (citing *Chambers*, 410 U.S. at 302, 93 S.Ct. 1038), *overruled on other grounds by Street v. State*, 567 N.E.2d 102 (Ind.1991):

> [W]hen the defendant's Sixth Amendment right to present a defense collides with the State's interest in promulgating rules of evidence to govern the conduct

---

**1.** Rule 804(b) sets out four situations that are not excluded by the hearsay rule if the declarant is unavailable as a witness. Rule 804(b)(3) provides the following exception:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

Ind. Evidence Rule 804(b)(3).

**2.** Rule 804(a) defines "unavailability of a witness" as situations where the declarant: (1) is exempt from testifying due to a court ruling that the testimony is privileged; (2) refuses to testify despite an order from the court; (3) testifies that he or she has a lack of memory of the subject matter of the declarant's statement; (4) is unable to be present or to testify at the hearing because of death or illness; or (5) is absent from the hearing and the proponent of the statement has been unable to procure the declarant's attendance. Evid. R. 804(a).

**3.** Rule 801(d) provides in pertinent part:

> A statement is not hearsay if ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... inconsistent with the declarant's testimony and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition. ...

Evid. R. 801(d).

of its trials, the merits of the respective positions must be weighed, [and] the State's interest must give way to the defendant's rights if its rules are "mechanistically" applied to deprive the defendant of a fair trial.

*Id.* Youngcourt's testimony, although not falling within any of the hearsay exceptions, was required to be permitted if excluding this evidence deprived the defendant of his right to a fair trial and specifically the right to present witnesses in his defense. I think it did.

The majority correctly notes that *Chambers* identified four factors when it required admission of testimony of three witnesses who claimed to have heard confessions to the crime by a third party: (1) whether the confession was made spontaneously to a close acquaintance shortly after the murder occurred; (2) whether each statement was supported by other evidence in the trial; (3) whether the confession was against the third party's interest; and (4) whether the third party was present and could be cross-examined. 410 U.S. 284, 300–01, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

The majority distinguishes *Chambers* by pointing out that: (1) Griffin was permitted to attack Dulin's credibility; (2) the trial court allowed some testimony alluding to Dulin's favorable evidence; (3) the confession was unlike the confession in *Chambers* because it was not made to a disinterested acquaintance and because the corroborating evidence was insufficient; and (4) the confession was made to one person as opposed to multiple people.

In my view, these factors are not sufficient to distinguish *Chambers*. First, permitting Youngcourt to allude to unspecified other evidence "that would strengthen [Griffin's] case" is a far cry from letting the jury hear that someone else admitted to the crime.

Second, there was substantial other evidence corroborating Dulin's statement that he committed the crime. Youngcourt's version is at least consistent with the account given by Patricia Griffin, who also claimed to have heard Dulin admit to the crime. Patricia Griffin further testified at trial that Dulin showed her where the car was after the carjacking. As the majority noted, she, like Dulin, had given police varying accounts of the crime, but at trial she testified that Dulin had admitted to committing the crime.[4] Dulin admitted that he met with Youngcourt after Griffin was arrested, although he denied making a confession. Furthermore, Dulin testified that he was dating Patricia Griffin at the time the incident took place and that he had access to her house where the crime was instigated. Patricia Griffin also stated that Dulin lived at her house at the time of

---

**4.** The majority and I differ as to the proper reading of Patricia Griffin's testimony in the transcript. Immediately before Patricia Griffin's testimony quoted by the majority, the following took place:

> State: Ma'am, did Mr. Dulin ever tell you that he took Mr. Wright's car?
> Defendant's attorney: Your honor, I'm going to—I'm going to object for Hearsay and beyond the scope.
> Court: I think it is hearsay.
> State: Well, Your Honor—
> Court: But if there's an exception, I'd be glad to listen to it.

> State: Withdraw the question. Well, Your Honor, can we approach?
> Court: Sure.
> [Counsel Approach the Bench]
> State: I'll ask you again, Miss Griffin, did Mr. Dulin tell you he committed any crime?
> P. Griffin: Yes.

It seems to me that in this context, a fair reading of Patricia Griffin's testimony is that she was referring to the carjacking crime during the State's questioning. If so, she testified that she heard Dulin admit to the carjacking.

the crime. From this, the jury may infer that Dulin was present in the house when Wright arrived, or even that Patricia and Dulin had set Wright up with the proposal of easy sex in order to steal his car. Youngcourt also supplied details that fit with other pieces of evidence. She specifically recalled Dulin's statement that he had presented himself to the victim by the name of "James" and that he would not let Patricia's brother James go to prison for a crime he committed. This item, unimportant in itself, nonetheless lends some credence to her account.

Third, the majority points out that Dulin's confession was not made independently to a large number of people. It was, however, made to two different people, Youngcourt and Patricia Griffin, according to their trial testimony. This is not the overwhelming number of confessions presented in *Thomas v. State*, 580 N.E.2d 224 (Ind.1991).[5] But in my view it is enough to require submission of the issue to the jury.

Finally, in coming to its conclusion that Dulin's confession was not reliable enough to be admitted over hearsay rules, the majority relies heavily on the fact that, at the time she met with Dulin, Youngcourt was Griffin's counsel. I disagree with the majority's characterization of Youngcourt as an interested witness. At the time Youngcourt testified, she was no longer Griffin's attorney. Additionally, Youngcourt, as an officer of the court, would face serious disciplinary consequences in addition to the sanctions for perjury applicable

to other witnesses. Moreover, I see no reason to suppose that Youngcourt, a public defender, had anything to gain by giving false evidence. *See Green v. Georgia*, 442 U.S. 95, 97, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979) (witness' testimony regarding an admission from a third party that defendant was not present during the victim's murder was permitted for several reasons including because the witness had no ulterior motive in making the statement).

In sum, *Chambers* teaches that hearsay rules may not shield trustworthy evidence from being admitted at trial. Youngcourt's testimony seems to me to be sufficiently reliable and corroborated by other evidence. Its conflict with other accounts is for the jury to sort out, not for the trial court or this Court to resolve as a matter of evidentiary ruling. The Court's initial opinion noted explanations and denials of Dulin's James/William identifications. *Griffin*, 754 N.E.2d at 904 n. 12. That issue too is for the jury. Applying the four factors emphasized in *Chambers*, (1) Dulin's confession to Youngcourt was supported by other evidence at Griffin's trial; (2) the confession was against Dulin's interest; (3) Dulin was present and was cross-examined at Griffin's trial; and (4) the confession appears to be made within months of the crime, although not to a close acquaintance. As a result, I believe Youngcourt's testimony was required to be admitted to avoid depriving Griffin of his Sixth Amendment right to present a defense. I would grant rehearing, reverse

---

**5.** *Thomas* involved a bank robbery in which two people were implicated. A cashier at a liquor store located close to the bank identified one Eric Nelson as the perpetrator, but the bank tellers picked the defendant out of a lineup that did not include Nelson. The defendant was arrested for the crime. Subsequently, Nelson was arrested on different charges and bragged to some twenty people that he committed the robbery for which the

defendant was to be tried. When the defendant called Nelson as a witness, Nelson invoked his Fifth Amendment right. *Id.* at 225. This Court held it was error for the trial court to exclude testimony of Nelson's confession because Nelson had originally been identified as the perpetrator, he had bragged of the crime to some twenty people, and he described the crime in great detail. *Id.* at 227.

Griffin's conviction, and remand the case to the trial court for a new trial.