**Jay B. STOKES, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 43A04–0811–CR–655.**

Court of Appeals of Indiana.

June 23, 2009.

---

1. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Jay A. Rigdon, Rockhill Pimnick LLP, Warsaw, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Jay Stokes was convicted of attempted armed robbery, possession of a handgun by a serious violent felon, and being an habitual offender, and was sentenced to serve sixty years. He argues 1) there should have been a mistrial because an alternate juror was involved in the jury deliberations; 2) the State improperly indicated to the jury Stokes had been involved in other crimes; 3) there was insufficient evidence he attempted to take anything from the liquor store he was accused of trying to rob; 4) there was insufficient evidence he was the person who committed the crimes that made him an habitual offender; 5) the court should not have admitted evidence of his prior convictions; and 6) his sentence is excessive.

We affirm.[1]

## FACTS AND PROCEDURAL HISTORY

Near closing time on March 23, 2007, Stokes and Darius Taylor entered the Leesburg Liquor Store in Kosciusko County. Stokes had a gun and ordered an employee behind the counter. Taylor tried to lock the door after entering the store. He found a gun under the counter and held it on the employee. Stokes went to the back of the store and saw the manager pushing an alarm button. He hit her and knocked her to the floor, then yelled "we got to go, we got to get out of here." (Tr. at 39.) Stokes and Taylor ran from the store.

The next morning police received a report of two suspicious-looking men behind a body shop in Pierceton, also in Kosciusko County. The men were Stokes and Taylor. They appeared overdressed for the weather. They claimed they were looking for a friend but did not know the friend's address. Stokes had a trash bag in his pocket and was wearing clothing similar to that worn by the person who tried to rob the liquor store. In Stokes' car police found bullets and a backpack Taylor wore during the attempted robbery. Nearby in the alley police found the gun taken from the liquor store and the gun Stokes used during the incident. Taylor told a police officer he was one of the robbers and Stokes was with him.

## DISCUSSION

### 1. Juror Misconduct

■ Stokes asked for a mistrial after the jury foreperson reported "I witnessed dialogue transpiring by the alternate [juror]." (Tr. at 475.) The jury had been instructed the alternate could participate only if the court excused a regular juror and directed the alternate to serve. The trial court did not abuse its discretion in denying the motion.

■ A mistrial is an extreme remedy warranted only when no other curative measure will rectify the situation. *Kirby v. State*, 774 N.E.2d 523, 533 (Ind.Ct.App. 2002), *reh'g denied, trans. denied* 792 N.E.2d 33 (Ind.2003). Whether to grant a mistrial is within the trial court's discretion and we will reverse only for an abuse of that discretion. *Id.* An abuse of discretion has occurred if the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.* at 534. We accord great deference to the trial court's decision, as it is in the best position to gauge the circumstances and

1. We heard oral argument April 1, 2009, at Northwood High School in Nappanee. We thank the school for its hospitality and commend counsel on the quality of their advocacy.

the probable impact on the jury. *Id.* When determining whether a mistrial is warranted, we must consider whether the defendant was placed in a position of grave peril to which he should not have been subjected. *Id.* The gravity of the peril is determined by the probable persuasive effect of the matter complained of on the jury's decision. *Id.*

The trial court did not inquire as to what the alternate said, but did ask each juror whether his or her decision was influenced by the alternate. Each said it was not. Despite the jurors' statements their decisions were not influenced by the alternate, Stokes argues a court cannot determine whether jurors were influenced by an alternate's impermissible participation, or whether a "reasonable juror" would have been, unless it knows what was said. Because the trial court did not "conduct a proper inquiry," (Br. of Appellant at 13), Stokes asserts a new trial is required.

 Juror misconduct involving an out-of-court communication with an unauthorized person[2] creates a rebuttable presumption of prejudice. *Griffin v. State,* 754 N.E.2d 899, 901 (Ind.2001), *on reh'g* 763 N.E.2d 450 (Ind.2002). A defendant seeking a new trial because of juror misconduct must show the misconduct (1) was gross and (2) probably harmed him. *Id.* We review the trial judge's determination on these points only for abuse of discretion, and the burden is on the appellant to show the misconduct meets the prerequisites for a new trial. *Id.*

Stokes cannot meet his burden to show the misconduct requires a new trial, as the record is silent on the nature of the alternate's participation, if any, and the jurors all stated they were not influenced by the alternate. Stokes notes the *Griffin* statement that "the fact that one juror says the alternate's input 'affected' her decision is not part of the analysis governing the request for a new trial. Rather, *the trial court must consider the alternate's conduct* in the overall trial context." *Id.* (emphasis supplied). Because Stokes' trial court did not do so, Stokes asserts, he did not have a fair trial and the verdict must be reversed.

In *Griffin* our Supreme Court determined an alternate juror's participation, in the form of an opinion about Griffin's guilt, did not amount to gross misconduct that probably harmed Griffin. "It is difficult to believe that if eleven other jurors favored conviction, the twelfth only acceded because the alternate also favored conviction when the majority solicited one more view." *Id.* at 903. Such "[i]ntrajury influence is not sufficient to overturn a verdict." *Id.* The State argues that is even more true in this case, where there is no evidence as to whether or how the alternate participated in the deliberations. We believe the trial court's inquiry whether the jurors were influenced by the alternate amounts to adequate "consider[ation of] the alternate's conduct in the overall trial context," *id.* at 901, to satisfy the *Griffin* standard.

### 2. *Evidence of Other Crimes*

 On several occasions, information Stokes characterizes as "comments

---

**2.** Stokes asserts "it is apparent from the transcript" that "an alternate juror had *impermissibly participated*" injury deliberations. (Br. of Appellant at 11) (emphasis supplied). The foreperson reported "dialogue transpiring" but nothing in the record indicates what the substance of the dialogue was or whether it might have amounted to "participation" in the deliberations. The State, without explanation, also treats the "dialogue transpiring" characterization as synonymous with "participation." Both parties, without explanation, treat the reported "dialogue transpiring" as an "out-of-court communication" and the alternate juror as an "unauthorized person."

regarding uncharged crimes which implicated the defendant, either indirectly or directly," (Br. of Appellant at 14), were placed before the jury without objection. As a general rule, the failure to object at trial results in a waiver of an issue on appeal. *Benson v. State,* 762 N.E.2d 748, 755 (Ind.2002). An exception to the waiver rule is the "extremely narrow fundamental error exception." *Id.* To qualify as fundamental, an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. *Id.* The error must amount to a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process. *Id.*

The decision to admit or exclude evidence is within a trial court's sound discretion and is afforded great deference on appeal. *Carpenter v. State,* 786 N.E.2d 696, 702 (Ind.2003). We will not reverse the decision unless it represents a manifest abuse of discretion that results in the denial of a fair trial. *Id.* An abuse of discretion in this context occurs where the decision is clearly against the logic and effect of the facts and circumstances before the court or it misinterprets the law. *Id.* at 703.

Stokes notes four such comments that he claims implicated him. First, the State asked Stokes' girlfriend "[Y]ou knew he had a criminal record, didn't you?" (Tr. at 159.) Second, the State elicited testimony that Stokes' co-defendant was being questioned about three armed robberies.[3] Third, there was testimony Stokes characterizes as a reference to a "string of robberies that had occurred supposedly near the time of the Leesburg Liquor Store robbery."[4] (Br. of Appellant at 14.) Fourth, Stokes says a charging information was introduced about "a prior crime of which he was not convicted."[5] (*Id.*)

Stokes acknowledges the fundamental error standard, but offers no explicit argument why the statements satisfied that standard. Rather, his argument in its entirety is: "In this case, perhaps one such mention could have gone unnoticed and be considered harmless. However, repeated mentions of the prior record, and other robberies where it was implied that the Defendant was involved created that fundamental error." (*Id.* at 15.)

 Stokes testified he had been in trouble with the law on two prior occasions, one of which involved a robbery. That testimony opened the door to the State's cross-examination about his criminal record. The scope of cross-examination is "limited to the subject matter of the direct exam and matters affecting the credibility of the witness." Ind. Evidence

---

3. Stokes characterizes this as evidence Taylor "was being investigated for other robberies *nearby* involving *two persons.*" (Br. of Appellant at 14.) The pages of the record to which he directs us do not support the assertions the robberies were "nearby" or involved "two persons."

4. The page of the transcript to which Stokes directs us indicates police were "pretty alert to the situation" when they received a call about the two suspicious persons in Pierceton who turned out to be Stokes and Taylor, because "we've had a string of crimes." (Tr. at 297.) That page of the transcript does not indicate the crimes were "robberies" or that they "occurred supposedly near the time of the Leesburg Liquor Store robbery."

5. Stokes was presented on cross-examination with the charging information, and the State asked him "You were charged with what's on this page and on this page is what you were convicted of. Do you agree with that?" Stokes replied "Yes sir." (Tr. at 437.) We accordingly decline to address Stokes' allegation the State improperly introduced evidence about a prior crime "of which he was not convicted."

Rule 611(b). It includes all matters reasonably related to the issues put in dispute by the direct examination, and all inferences and implications arising from the testimony on direct examination. *Tawdul v. State,* 720 N.E.2d 1211, 1217 (Ind.Ct. App.1999), *trans. denied* 735 N.E.2d 226 (Ind.2000). Any matter that tends to elucidate, modify, explain, contradict, or rebut direct testimony is permissible during cross-examination. *Id.*

■ Generally, when a defendant injects an issue into the trial, he opens the door to otherwise inadmissible evidence. *Id.* When, in direct examination, a party leaves the trier of fact with a false or misleading impression of the facts related, the direct examiner may be held to have "opened the door" to the cross examiner to explore the subject fully, even if the matter so brought out on cross examination would otherwise have been inadmissible. *Id.* at 1217–18. Admission of Stokes' statements about his criminal record was not an abuse of discretion. Stokes also opened the door to the question to Stokes' girlfriend about his criminal record when Stokes elicited testimony from her that he was not a violent[6] person. This left the jury with an incomplete or misleading impression of the facts related, and permitted the State to clarify that Stokes' girlfriend knew he had a criminal record.

■ Stokes opened the door to the testimony Taylor was being questioned about two other robberies in addition to the one for which Stokes was being tried, because Stokes himself elicited that information when cross-examining a State's witness. Stokes asked the witness whether Taylor was offered "1 for 3" and "two freebies" for cooperating with police. (Tr.

at 132.) On recross, the State elicited testimony to clarify that Taylor was being questioned about three robberies and "if somebody's gonna cooperate instead of stacking charges against them ... we'll just charge one instead of charging all three ...." (*Id.* at 133.) Nor was Stokes prejudiced by the testimony; the witness never testified Stokes was a suspect in those robberies.

■ Finally, admission of a deputy's statements there had been a "string of crimes" and Stokes and Taylor were "individuals that we may be concerned with," (Tr. at 297), was not fundamental error because no evidence was ever presented linking Stokes to the "string of crimes." Rather, it was offered to explain why the deputy detained Stokes and Taylor when he did.

### 3. *Sufficiency of Evidence—Attempted Armed Robbery*

■ Stokes moved for a directed verdict for attempted armed robbery on the ground the State had presented no evidence he attempted to take anything. This allegation of error is not available to Stokes because he presented evidence after the motion was denied. *See, e.g., Sypniewski v. State,* 267 Ind. 224, 228, 368 N.E.2d 1359, 1362 (1977) ("Appellant next contends error in the trial court's denial of his motion for judgment on the evidence at the close of the state's case in chief. After denial of his motion, appellant introduced evidence in defense. This action constitutes a waiver of any error on this question.").

■ Notwithstanding the waiver,

---

**6.** Stokes' criminal record included robbery, which the State characterizes as "inherently violent." (Br. of Appellee at 15.) A person commits robbery when he knowingly or intentionally takes property from another person or from the presence of another person by using or threatening the use of force on any person or by putting any person in fear.

there was evidence Stokes attempted[7] to take something from the store. The State proved there was a taking of property with evidence Taylor, Stokes' accomplice, took a gun from the store. In Indiana there is no distinction between the responsibility of a principal and an accomplice. *Wise v. State,* 719 N.E.2d 1192, 1198 (Ind.1999). "A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person ... has not been prosecuted for the offense...." Ind.Code § 35-41-2-4.

### 4. Sufficiency of Evidence—Attempted Armed Robbery and Handgun Possession

■ Stokes characterizes the State's case as relying "entirely on circumstantial evidence," (Br. of Appellant at 18), and asserts the only such evidence was his DNA on a mask, which mask also showed DNA from two other people.

That was not the only evidence before the jury that Stokes committed attempted armed robbery and possessed a gun. The store manager identified Stokes in court as the person who entered the store armed with a gun and who knocked her down. Taylor told police Stokes was with him at the liquor store. Stokes and Taylor were found together the next morning and Stokes was wearing shoes similar in appearance to those worn by one robber. Bullets were found in Stokes' car and the gun Stokes used was in the alley nearby along with the gun taken from the store. Stokes called one of his girlfriends and asked her to say, apparently to establish an alibi, Stokes had been with her. There

was ample evidence to support Stokes' convictions.

### 5. Sufficiency of Evidence—Prior Convictions

■ Stokes asserts the evidence he had prior convictions was insufficient to support the habitual offender enhancement and the conviction of unlawful possession of a firearm by a serious violent felon, because "no identifying evidence connected the certified judgments of conviction" to him. (Br. of Appellant at 19.)

Stokes was convicted after a trifurcated jury trial. After phase two, he was found guilty of the handgun charge, and after phase three the jury found he was an habitual offender. Stokes acknowledges two certified judgments of conviction were entered into evidence in phase two, but says the State made no attempt in either the second or third phase to prove he was the same Jay B. Stokes who was the subject of those convictions.

All the evidence from phase one of Stokes' trial, on the attempted armed robbery count, was incorporated into phases two and three. In phase one Stokes admitted he was the person indicated in the judgments of conviction of criminal recklessness and robbery, which convictions the State later offered as support for the handgun and habitual offender counts.

■ We decline to hold the State was obliged to otherwise connect Stokes to the certified documents. There must be supporting evidence to identify a defendant as the person named in documents offered to prove prior convictions, but the evidence may be circumstantial. *Hernandez v. State,* 716 N.E.2d 948, 953 (Ind.1999), *reh'g*

---

7. The State tries to show Stokes *attempted* to take something by pointing to evidence he *"intended* to take property by force." (Br. of Appellee at 19) (emphasis supplied). It offers

no argument or authority to support the premise evidence of "intent" is evidence of an "attempt," and we decline its invitation to so hold.

*denied.* If the evidence yields logical and reasonable inferences from which the finder of fact may determine beyond a reasonable doubt that it was a defendant who was convicted of the prior felony, then a sufficient connection has been shown. *Id.* Stokes' own testimony provided adequate identifying evidence.

### 6. *Appropriateness of Sentence*

∎ Stokes was sentenced to twenty years for attempted armed robbery, twenty years for possession of a handgun by a serious violent felon, and twenty years for being an habitual offender. Twenty years was the maximum that could be imposed for the two Class B felonies, and the advisory sentence is ten years. Ind.Code § 35–50–2–5. A person found to be an habitual offender is to be sentenced to an additional fixed term that is not less than the advisory sentence for the underlying offense nor more than three times the advisory sentence for the underlying offense. Ind.Code § 35–50–2–8. The sentences were ordered served consecutively.

∎ Even if a trial court has acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision. *Hollin v. State,* 877 N.E.2d 462, 465 (Ind. 2007). Our authority is implemented through Indiana Appellate Rule 7(B), which allows us to revise a sentence authorized by statute if we find it "inappropriate in light of the nature of the offense and the character of the offender." We assess a trial court's recognition or nonrecognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate.

*Sanchez v. State,* 891 N.E.2d 174, 176 (Ind. Ct.App.2008).

Stokes asserts his presentence investigation report identified only two aggravating circumstances—his criminal history and that he had violated probation. He notes there were only two felony convictions listed in the presentence report, which convictions were the same ones used to support the habitual offender enhancement, and asserts there was "a lack of evidence as to his criminal record separate from those felonies to justify" maximum and consecutive sentences. (Br. of Appellant at 23.) This is a mischaracterization of the presentence investigation report, which listed a number of other offenses, both juvenile and adult, and indicated Stokes was at a high risk to reoffend. The report recommended a sixty-year sentence. Stokes acknowledged at the sentencing hearing that he had read and reviewed the report, and counsel stated "we're willing to accept [it] as substantially accurate." (Tr. at 504.)

Stokes also asserts the enhancement of his sentences "solely because of his prior criminal record" was wrong because "aggravation to the maximum for both [Class B felonies] should be reserved for the 'worst of the worst.'" (Br. of Appellant at 22.) We have held that in general, the maximum possible sentences should be reserved for the worst offenders and offenses.[8] *See Buchanan v. State,* 767 N.E.2d 967, 974 (Ind.2002). Stokes argues he is not in that category because he "does not have the lengthy criminal history necessary," and he asserts "no other aggravating circumstances were found." (Br. of Appellant at 22.)

---

**8.** The trial court said "I don't think, Mr. Stokes, you're the absolute worst kind of criminal. I think you come pretty close." (Tr. at 516.) The court characterized Stokes as a "bloodsucker": "You blood sucked the women you had children with and you never supported them, you never supported your kids." (*Id.* at 515.)

It is apparent the trial court considered more than just the two felonies that supported the habitual offender enhancement. It noted Stokes had a history "both delinquent and criminal," (Tr. at 512); it reviewed those offenses, many of which involved stealing property, in detail. It noted Stokes' probation violations and adult misdemeanor convictions of criminal trespass and false informing, which it characterized as "an undercurrent to what happened here." (*Id.* at 514.)

Stokes does not offer argument regarding aspects of his character not reflected by his criminal record, nor does he argue the nature of his offense requires revision of his sentence. Stokes, who was only twenty-six when sentenced, had a significant history of juvenile and adult offenses involving property crimes or crimes of violence. He had violated probation numerous times and had five adult misdemeanor convictions. The presentence report rated Stokes at a high risk to re-offend. In arguing "little good can be said" about Stokes' character, (Br. of Appellee at 23), the State notes Stokes never married but has fathered eight children by five different women, and he does not provide any court-ordered support for them. The State characterizes him as a "skilled enough liar" to be able to date or live with three women at the same time, each of whom thought herself his only girlfriend. (*Id.* at 24.) Finally, as to the nature of his offense, the State notes the attempted robbery involved violence and use of a gun.

We cannot say Stokes' sentence is inappropriate in light of his character, and we affirm his convictions and sentence.

Affirmed.

BAILEY, J., and BARNES, J., concur.